**STATE OF NORTH CAROLINA,**
Appellant,

v.

**John Edward SMITH, Appellee.**

**No. 73-1277.**

United States Court of Appeals,
Fourth Circuit.

Argued April 1, 1974.

Decided July 25, 1974.

Richard N. League, Asst. Atty. Gen. of N. C. (Robert Morgan, Atty. Gen., on brief), for appellant.

William A. Reppy, Jr., Professor, Duke University Law School, Durham, N. C., (Court-appointed counsel), for appellee.

---

Before BRYAN, Senior Circuit Judge, and WINTER and ADAMS,* Circuit Judges.

PER CURIAM:

North Carolina now appeals the District Court's grant of habeas corpus relief to John Edward Smith, a State prisoner. Believing that he was denied early release by the Indeterminate Sentence Committee because he had successfully petitioned the court to credit his custody-time with the period of his appeal's pendency, the District Court held that Smith's right to unrestricted access to the courts was thereby unconstitutionally infringed. We vacate the judgment and remand the case for further evidence and fact findings on the Committee's reasons for its actions.

The events in this case must be set forth in some detail. Smith was serving a seven to nine year indeterminate sentence upon his conviction for breaking and entering and larceny. He also had an additional six month consecutive sentence for escape. Smith escaped from prison again for some ten months and was recaptured on March 23, 1972. On May 29, 1972 Smith inquired of the Department of Corrections regarding his release date and was informed that the "minimum and approximate expiration date" of his indeterminate sentence was November 15, 1972. Smith then filed a petition with the District Court requesting credit upon his indeterminate sentence for fifty-five days of jail time awaiting trial and for seven months of jail time awaiting appeal.

The first action following that petition was that Smith was brought to the Mecklenburg County Superior Court and on July 27, 1972 was given an additional three-month sentence for his escape lasting from May, 1971 to March, 1972. This sentence was to run consecutively with the previous six-month sentence for the earlier escape.

The next event was the order of the District Court below on August 8, 1972,

346 F.Supp. 361, granting Smith credit for the seven months he had spent in prison pending the appeal of his original burglary conviction. This changed Smith's minimum release date on the indeterminate sentence imposed for that offense from November 15, 1972 to April 13, 1972. Since that date had been passed some four months previously, the District Court assumed that the claim for an additional fifty-five days pretrial custody credit was moot.

Upon receiving word of the District Court's August 8, 1972 order, the Records Supervisor, Ben Baker, brought Smith's case to the attention of the Indeterminate Sentence Committee. That body decides whether a prisoner committed on an indeterminate sentence is released on his minimum release date, or is kept incarcerated. Evidence indicated that this decision is generally made approximately two months prior to the minimum release date. Though no evidence was presented on this point, it may therefore be fairly assumed that as of August 8, 1972, the Indeterminate Sentence Committee had not yet considered whether Smith's penal record warranted his continued confinement beyond his minimum release date. The Committee conferred on August 10, 1972 and concluded that because of Smith's prison record of three major infractions and two escapes, and his present attitude and conduct, he should not be released even though the minimum release date had passed.

Smith then filed this habeas corpus action in the District Court. The Court construed his petition to allege that his burglary sentence had been recomputed and his sentence extended because he had actively sought credit for time in jail pending trial and appeal. A hearing was held in the District Court on February 15, 1973, and on February 23 the District Court found in Smith's favor. 355 F.Supp. 217. Since Smith's three- and six-month escape sentences would have been fully served by February 1973

---

* Judge Arlin M. Adams of the Third Circuit sitting by designation.

had he been released from his indeterminate sentence for burglary on the minimum date of April 13, 1972, the District Court ordered Smith's immediate discharge from prison. The State's appeal to this court followed.

 The District Court is of course correct that extending or increasing punishment because an inmate successfully petitioned a court is an unconstitutional infringement of his right to unrestricted access to the courts. Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969); Coleman v. Peyton, 362 F.2d 905 (4th Cir. 1966). But we believe that there is simply not sufficient evidence as the record stands to support the District Court's finding that the Indeterminate Sentence Committee extended Smith's sentence beyond the minimum release date solely or even partially because he had been granted a seven-month credit on his sentence.

The District Court appears to have believed that the chronology of events indicated that the Indeterminate Sentence Committee's decision on August 10, 1972, to retain custody of Smith beyond his minimum release date was a direct response to the Court order of August 8. It is stated in the Court's order of February 23 that "[t]he respondent offered no evidence to rebut the strong and rational inference in petitioner's favor that arises from a simple recital of the facts. The intent of the Indeterminate Sentence Committee in dealing with Smith's case has not been adequately explained." This view is bolstered by references to other evidence in the record —that Smith had had no misconduct citations after the response to his May 29, 1972, inquiry indicated that he would be eligible for release from his indeterminate sentence on November 15, 1972, and that the penalty for his escape offenses had been exacted by additional sentences.

We conclude that no presumption of prejudice can be implied merely from a recitation of the chronology of the Indeterminate Sentence Committee's decision to keep Smith in prison beyond his minimum release date. The consideration of

his release by the Committee two days after the Court order granting credit was apparently the first time the Committee conferred to decide whether or not Smith would be released on his minimum release date. As previously noted, evidence tended to show that that decision was normally made approximately two months before the earliest possible date of a prisoner's release, and since prior to August 8, 1972, Smith's minimum release date was November 15, 1972, there is no reason to assume that the Committee would have met before August 10, 1972, to consider whether his penal record justified incarceration beyond his minimum release date. Thus, this is not a situation where prejudice may be inferred from the decision of the Committee to retain Smith in custody beyond the minimum expiration date of his indeterminate sentence, because the Committee's action was apparently taken at the first opportunity it had for doing so. This situation is distinguishable from an instance where, for example, the Committee had decided on August 1 to release Smith on his minimum release date, an order was entered August 8 changing that date from November 15 to the previous April, and the Committee then modified its earlier decision.

As a result of the somewhat unorthodox order of proof followed in this case, two members of the Indeterminate Sentence Committee, who were present and prepared to testify that they did not withdraw good time credit for any improper reason, were not heard. This testimony we think was important. Accordingly, further evidence should be taken, especially including the testimony of the two Committee members just mentioned, and additional findings of fact made by the District Court in order to determine on what basis the Committee denied early release. Hence the decision of the District Court must be vacated and the case remanded for further proceedings.

Vacated and remanded.

WINTER, Circuit Judge (dissenting):

Were this case only what the majority describes, I think that I would be able to

concur in its opinion. I cannot agree to reversal and remand, however, when I consider *all* that the record reflects. I respectfully dissent.

The district court granted a writ of habeas corpus because it inferred and found that petitioner's indeterminate sentence had been extended because he had successfully invoked the aid of the district court to obtain credit on his sentence for the time spent in prison awaiting the outcome of his appeal to the North Carolina appellate courts. He had also sought credit for pretrial confinement, but it was not previously granted on the mistaken assumption that the claim was moot.

The majority and I are agreed that an extension of an indeterminate sentence beyond the minimum release date because an inmate successfully petitions a court to obtain credit on a sentence to which he is entitled constitutes an unconstitutional infringement of his right to unrestricted access to the courts. The sole question in this case is one of fact—was petitioner's indeterminate sentence extended for this reason? The district court found that it was, and I think the finding not clearly erroneous.

The majority sets forth the chronology of the Indeterminate Sentence Committee's decision to keep petitioner in prison beyond his minimum release date, and it stresses that this was apparently the first time the Committee "conferred," or in the normal course of events would have had the opportunity to "confer." But the record reflects much more, and it is unnecessary to decide whether an invalid motivation on the part of the Committee may properly be inferred from mere recitation of the chronology. The record reflects the following:

1. Petitioner's right to credit on his sentence for pretrial confinement and confinement pending appeal was established by Cole v. North Carolina, 419 F. 2d 127 (4 Cir. 1969). Since the decision in that case, North Carolina prison authorities, including the Indeterminate Sentence Committee, had demonstrated marked adamancy in conducting themselves and their official business in conformity with its holding. When petitioner sought and obtained credit for confinement pending appeal, his was the *tenth* instance in which an order of a federal court was necessary to exact compliance with Cole, and even in petitioner's case, his request for credit had been denied by the prison authorities and twice denied by a state judge, even though in answer to the complaint respondents admitted that petitioner's case was indistinguishable from Cole.

2. Against this background of obdurate obstinacy on the part of state officials, including the Committee, the Committee acted with seeming haste and unnecessary informality as soon as it was advised that on August 9, 1972 the district court had ordered that petitioner be given credit for confinement pending appeal and that the effect of the order would be to advance petitioner's minimum release date on the sentence for robbery to April 13, 1972. At the time the Committee acted, petitioner had been sentenced to two consecutive terms of six and three months, respectively, for escape. Obviously petitioner was not about to be released and it was unnecessary for the members of the Committee to confer informally by telephone, as was done, rather than to have a considered exchange of views in the presence of one another.

3. The Committee's hasty telephonic determination that "in the best interests of the Department and the inmate" petitioner's minimum release date should be extended for another six months (to October, 1972, when it would again be considered),* is supported by specious reasons. The reasons assigned were that

---

* It may be of significance that, when October arrived, consideration of petitioner's minimum release date was indefinitely postponed. Only after the instant case was filed and a hearing date fixed was the matter taken up. Petitioner's minimum release date was then fixed at January 31, 1973, so that after that date petitioner was serving his sentences for escape.

petitioner "has a past record consisting of three major infractions and three escapes. Due to this, and his present attitude and conduct . . . [he should not be released on April 13, 1972]."

Petitioner's three escapes had been the subject of separate punishment. He had already served a sentence of one year for the first escape and he had yet to serve consecutive terms of six months and three months for the other two. Not only had the convictions for escape not had any effect upon petitioner's minimum release date prior to the district court's order to give credit for confinement pending appeal, they had not resulted in a forfeiture of "good time" earned prior to the escape. It is incomprehensible to me how they could properly be of significance at the time that the Committee invoked them.

One of petitioner's "major" infractions is not fully explained in the record. The record does show, however, that it was marked "PAR," which, according to the explanation of a prison official, meant that it was nothing serious. The other two infractions were for the use of profanity, one such occasion in *1967*, and the other in 1970. It strains my credulity, as it must have that of the district judge, to treat two isolated uses of profanity, in a prison setting—one occurring five years earlier—as a valid, let alone an actual, reason for extending a prison term.

Absent some explanation or specification of what about petitioner's then "present attitude and conduct" warranted extending his incarceration, and the record contains none, I think that the assertion provides no justification for the result. If required to draw an inference, I could only conclude that respondents had a deep aversion to petitioner's assertion of his constitutional rights. Manifestly, that would only prove petitioner's case.

4. The district court heard the instant case in somewhat unorthodox fashion, in that it undertook to hear respondent's witnesses before it heard evidence from petitioner. Understandably, it did so in an effort to learn how respondents computed the time they claimed that petitioner was required to serve. Although it departed from the usual order of proof, it is quite clear that the district court did not confuse the burden of proof. Throughout, it evidenced recognition that the burden of proof rested on petitioner. Notwithstanding that there were present in the courtroom and prepared to testify two members of the Committee, neither they nor their counsel sought to elicit the reasons why petitioner's sentence had been extended; and this was true although the district court invited the parties to present any additional evidence relevant to the case. Their silence, under established rules of this circuit and elsewhere, can only be treated as implying that their testimony would not have been helpful to their defense.

In sum, I find ample evidence to support the district court's inference.