**J. Ferber COLEMAN, Appellant,**

v.

**C. C. PEYTON, Superintendent of the Virginia State Penitentiary, Appellee.**

**No. 10473.**

United States Court of Appeals
Fourth Circuit.

Submitted June 2, 1966.

Decided June 24, 1966.

Before HAYNSWORTH, Chief Judge, SOBELOFF, Circuit Judge, and HEMPHILL, District Judge.

HAYNSWORTH, Chief Judge.

J. Ferber Coleman, an articulate and resourceful prisoner, seeks injunctive relief restraining his keepers from interfering with his correspondence, from visiting punishment upon him without just cause, from discriminatory work assignments, from racial discrimination, and from imposing retribution upon him for his institution of these proceedings.

The District Court denied relief, and we affirm.

Initially, the District Court dismissed the petition, without a hearing, for insufficiency. While recognizing that most of the claims were stated in vague and general terms, we thought he should be given an opportunity to amend his petition by particularizing his claims. For that purpose we vacated the order of dismissal with the suggestion that he be tendered the asistance of appointed counsel.[1]

In accordance with our suggestion, the District Judge appointed a competent lawyer to represent Coleman. Coleman quickly found fault with the lawyer and discharged him. The District Court secured another lawyer, a member of one of Richmond's most prominent law firms and then the President of the Richmond Bar Association. Coleman found him unsatisfactory, too, and discharged him. With the assistance of relatives, Coleman than obtained a third lawyer, who appeared with him at a scheduled hearing, but then Coleman denounced his retained attorney and sought his discharge. The Court refused permission to that lawyer to absent himself and the hearing proceeded to a conclusion.

On appeal the principal issues arise out of an attack upon the District Court's findings of fact and out of its refusal to accept the summary dismissal of the third lawyer. Their disposition in this court has been complicated by Coleman's discharge of yet another lawyer.

We appointed an able lawyer, a member of another of Richmond's most prominent law firms, to present the appeal. He sent to Coleman a rough draft of a brief he had prepared. It said all that reasonably could be said upon the issues which the record fairly may be construed to present, but it was wholly unacceptable to Coleman. He rejected it because it did not present "the major issue." Coleman's claim that the record conclusively shows an active conspiracy between penal officials and the Richmond Bar Association to deprive him of his rights,[2] because he thought it did not sufficiently present his claim that he is the victim of cruel and unusual punishment and of continuing reprisals, and because of other claimed deficiencies. He undertook the discharge of his appellate counsel.

We have examined the entire record, the brief prepared for filing and rejected by Coleman,[3] an answering brief of the Commonwealth and all of Coleman's motions and communications.

In 1954, Coleman was convicted of murder of his stepfather, and a sentence of life imprisonment was imposed upon him.

■ For almost ten years, he appears to have adjusted himself well to life in prison. By his own assertion, his abilities were recognized; he was trusted; his work was commended, and he was placed in charge of the largest workroom in the penitentiary. In 1963, however, a requested job transfer was denied. The denial, he charged, was a racial discrimination, though his prison history until then seemingly belies his assumption. Thereafter his situation deteriorated. From time to time he was placed in punitive confinement or maximum security detention on such charges as incitement of riots. Generally, he denies the charges or claims deliberate provocation, but the record contains adequate support for the District Court's conclusion that Coleman brought upon himself the difficulties in which he has been involved since 1963. Certainly the findings that he has not been the victim of racial discrimination or of cruel or unusual punishment are not clearly erroneous.

■ Nor can we say that the record discloses any pattern of unwarranted interference with Coleman's right to send and receive mail within the princi-

---

1. Coleman v. Peyton, 4 Cir., 340 F.2d 603.

2. The record contains no support for any such inference.

3. Coleman, himself, undertook to file it as an exhibit to a motion.

ples we discussed in McCloskey v. State of Maryland, 4 Cir., 337 F.2d 72. In the record and in the return to an order to show cause which we entered as a result of equivocal circumstances occurring while the appeal was in this court, the Warden disavows any purpose to hinder or delay prisoners in their access to the courts. There is no basis for a finding that he has substantially or intentionally done so within the rules previously enunciated.

█ It is appropriate to comment, however, that a right of access to the courts is one of the rights a prisoner clearly retains. It is a precious right, and its administratively unfettered exercise may be of incalculable importance in the protection of rights even more precious.

█ The right and its exercise are adequately secured in the future, we think, only if delivery to a prisoner of incoming matter from a court having jurisdiction to hear his complaints and the mailing of his communications to such a court are delayed no longer than the necessities of sorting require. Further delay for other purposes, such as censorship, seems both inappropriate and unnecessary. If a Virginia prisoner should attempt to use a Virginia court or one of the United States as a letter drop for the conduct of an unauthorized or an objectionable correspondence the court can be expected to report the matter promptly and to refuse to suffer such a perversion of its offices.[4] ( Censoring takes time, and a letter at the bottom of a pile does not receive the immediate, or sometimes the prompt, attention of the censor. / Precensorship sorting followed by the immediate dispatch of communications addressed to the courts is both becoming and essential to the avoidance of unnecessary delay.

█ Reversal is not required by the District Court's refusal to permit Coleman to discharge his third lawyer in the midst of the hearing.

█ Coleman contends that he had an absolute right to dispense with the services of his lawyers at any time, though on an earlier occasion he had a very different idea.[5] His present contention is correct in principle, so long as the client who discharges his lawyer during a hearing, is prepared to proceed alone and acts with awareness of its consequences. Such acts pose difficult problems for a trial judge, however, and frequently are the bases of motions for continuance, mistrial and retrial. The avoidance of such problems and conscientious efforts to provide adequate protection for a party's rights have led many judges, as the trial judge did in Coleman's murder trial,[6] to require the attorney to remain in the courtroom available for consultation and assistance. More, perhaps, should not be required of the lawyer, if the party objects to it and prefers to proceed on his own, but difficult clients make difficult problems for the judge, and the District Court here was clearly acting in aid of what it regarded as Coleman's interest.

This record does not disclose anything occurring after the attempted discharge of the lawyer which was prejudicial to Coleman. His criticisms of the lawyer go to past occurrences. Coleman testified fully. He had every opportunity to present everything he could have pre-

4. Letters addressed by a federal prisoner to a relevant court or one of its judges are not censored. They are mailed with notices that they have not been censored and that the recipients are requested to report any abuse of the right to address the court without censorship.

5. See: Coleman v. Smyth, E.D.Va., 166 F. Supp. 934, aff'd 4 Cir., 260 F.2d 518. When brought to trial on the murder charge, Coleman refused the assistance of appointed counsel. Nevertheless, the trial judge required the lawyer to remain in the courtroom to assist Coleman to the extent Coleman wished, and he did render some assistance. Later Coleman sought habeas corpus, and one of his grounds was that he had been tried without representation by a lawyer. There his contention was that he should not have been permitted to dispense with the lawyer's services.

6. See footnote 5, supra.

sented if his dismissal of his lawyer had been immediately allowed. He shows no prejudice resulting to him from the lawyer's continued presence and participation in the hearing.

The judgment is affirmed.

All motions filed by Coleman in this court, to the extent they have not been previously granted, are denied.

The Warden's return to this court's order is accepted, and no injunction will issue, but his consideration of the views of this court about the handling of prisoners' correspondence with courts, as expressed in this opinion, is invited.

Affirmed.