**Michael Frederick LINGO, Plaintiff,**

v.

**Dr. BOONE et al., Defendants.**

**No. C-73-2290-CBR.**

United States District Court,
N. D. California.

Oct. 28, 1975.

Michael Frederick Lingo, pro per.

Evelle J. Younger, Atty. Gen. of Cal., San Francisco, Cal., Jack R. Winkler, Chief Asst. Atty. Gen., Edward R. O'Brien, Asst. Atty. Gen., Ina L. Gyemant, Deputy Atty. Gen., for defendants.

## MEMORANDUM OF OPINION

RENFREW, District Judge.

Plaintiff, a prisoner in state custody at the Correctional Training Facility, Soledad, California, filed this civil rights complaint under 42 U.S.C. § 1983 on December 20, 1973, alleging a variety

of claims based on his treatment while in confinement. The Court, by orders dated January 23, 1974, and March 9, 1974, dismissed certain of these claims and ordered service of process on others. Following a period during which considerable discovery was undertaken by plaintiff, defendants moved on November 15, 1974, for summary judgment on all claims, and plaintiff countered with his own motion for summary judgment on November 26, 1974.

By order dated April 2, 1975, the Court granted partial summary judgment in favor of defendants; denied plaintiff's motion for summary judgmènt, entry of default judgment, and appointment of counsel; permitted plaintiff to amend his complaint and add Counselor A. N. Christensen and Officer J. Pearson as defendants; and continued defendants' motion for summary judgment on plaintiff's remaining claims, with leave to both parties to file supplemental materials. Defendants filed such materials on July 28, 1975. Also on that date defendants Christensen and Pearson moved for summary judgment. Plaintiff has not filed any supplemental materials, nor has he taken any further steps to prosecute this lawsuit.

Plaintiff's remaining claims allege constitutional deprivations in the following particulars: (1) the unavailability of a diabetic diet; (2) the confiscation of a radio and batteries, 50 stamped envelopes and 3 ballpoint pens; (3) denial of requests to attend Jewish services; (4) censorship of mail; (5) lack of adequate access to the prison law library; (6) denial of speedy duplication of legal materials; and (7) threats by two defendants intended to induce plaintiff to terminate the instant action. The Court will discuss each of these claims in turn.

### 1. Unavailability of a Diabetic Diet

■ Defendant Boone stated in an affidavit that a proper diet is provided for all diabetics at Central Training Facility, Soledad, including plaintiff. In its order of April 2, 1975, the Court noted that Boone's conclusory statement does not establish the absence of a genuine issue of material fact, and gave defendants leave to file supplemental material. Boone has submitted a second affidavit in which he states that all inmates at the Central Training Facility, Soledad, are furnished a general diet approximating 40 percent of calories from carbohydrates, 20 percent from protein and 40 percent from fat, and that if diabetes is under control with medication, as in plaintiff's case, no special diet is necessary. Defendants have also submitted the affidavit of Charles E. Du Bois, a registered dietician, who is the Departmental Food Administrator for the Department of Corrections. Mr. Du Bois states that a diabetic who is receiving a daily dose of insulin can be on an unrestricted diet, provided he avoids high carbohydrate high sugar foods, that no diabetic diet is necessary unless a diabetic is confined in the hospital for therapeutic treatment, and that no diabetic diet is available in the prison. Plaintiff has filed no affidavits refuting these medical opinions, and the Court therefore accepts them as true. Nor has plaintiff provided any indication that his diabetes is not under control with medication or that he, unlike other diabetics, cannot be on a general diet. Therefore, the Court concludes that there is no genuine issue of material fact with respect to plaintiff's claim that he has received inadequate medical care because of the unavailability of a suitable diet, and defendant's motion for summary judgment thereon will be granted.

### 2. Confiscation of Personal Property

■ With respect to the confiscation of a radio and batteries from a Christmas package sent to plaintiff, defendants previously submitted affidavits and documents establishing that radios and batteries were not authorized items on the Christmas Package List, that noncomplying items received in Christmas

packages would be donated to a charitable institution, and that a radio and batteries sent to plaintiff in a Christmas package were withheld from him. Defendants have now supplemented their evidentiary materials with the affidavit of A. Franco, a clerk in the mailroom at CTF–Soledad, and a copy of the cover and an inside page of the mailroom ledger for outgoing mail. These materials establish that plaintiff's radio and batteries were returned to one L. Majewski of Long Beach, California, on February 1, 1974.

With respect to the confiscation of 50 stamped envelopes and 3 ballpoint pens, this issue was first raised in plaintiff's "Amendment of Complaint" filed October 21, 1974. Plaintiff states that defendant Christensen confiscated these items as contraband and said that they would be placed in plaintiff's personal property, but that on October 15, 1974, in response to plaintiff's inquiry, Christensen told plaintiff that the items had been lost.

■ Defendants argue that this part of plaintiff's claim is barred by his failure to exhaust state remedies, specifically, his failure to utilize the internal prison review procedures set forth in Institution Order #60, dated July 9, 1974. In support of their contention that state administrative remedies must be exhausted prior to the commencement of a civil rights suit, defendants cite *Miller v. Procunier*, Civil No. 73–1932–LHB (N.D.Cal., March 26, 1974), and *Wilson v. Britt*, Civil No. 74–1299–SC (N.D.Cal., March 26, 1975). The *Wilson* decision relied primarily upon two Second Circuit opinions, *Blanton v. State University of New York*, 489 F.2d 377, 382–384 (2 Cir. 1973), and *Eisen v. Eastman*, 421 F.2d 560, 568–569 (2 Cir. 1969). In the opinion of this Court, however, the law in this Circuit is that

"if what is sought is 'relief from, or compensation for, a deprivation of civil rights which had already occurred,' rather than merely 'forestalling a threatened future deprivation of civil rights,' no exhaustion of state administrative remedies is required." *Canton v. Spokane School District #81*, 498 F.2d 840, 844 (9 Cir. 1974), quoting *Whitner v. Davis*, 410 F.2d 24, 28 (9 Cir. 1969). *See also Toney v. Reagan*, 467 F.2d 953, 956 (9 Cir. 1972), *cert. denied*, 409 U.S. 1130, 93 S.Ct. 951, 35 L.Ed.2d 263 (1973).

The distinction drawn by the Court of Appeals for this Circuit between prospective and retrospective state administrative remedies is itself "an exception to the general rule that exhaustion is ordinarily unnecessary in § 1983 litigation; see Gibson v. Berryhill, 411 U.S. 564, 574–575, 93 S.Ct. 1689, 36 L.Ed.2d 488; see also Marshall, J., concurring, at 581 * * *." *Miller v. School District Number 167, Cook County, Ill.*, 495 F.2d 658, 661 n. 10 (5 Cir. 1974).

■ Plaintiff's claim concerning the confiscation of personal property now conceded to be lost envisions "relief from, or compensation for, a deprivation of civil rights which had already occurred," *Whitner v. Davis, supra*, 410 F.2d at 28. Accordingly, the Court holds that plaintiff's failure to exhaust state administrative remedies does not bar his civil rights claim in the instant action.

■ Turning to the merits of plaintiff's claim, defendants have submitted the affidavit of defendant Christensen and a copy of Institution Order #78, concerning inmates' personal property. Defendants maintain that since contraband is easily packaged in such items, pens must be ordered through the canteen and cannot be received by mail. The Court agrees with defendants that the confiscation of plaintiff's pens reasonably promoted the objective of preserving prison security.

■ After confiscation, plaintiff's pens were placed in his personal property, held by the institution, and apparently were lost thereafter. Plaintiff has not alleged that any defendant acted intentionally, maliciously, or discriminatorily to deprive him of his property, and,

indeed, there is no indication whatsoever that the loss of his property was due to anything other than inexplicable misfortune. Under these circumstances, plaintiff's claim is but an action for damages for the loss or taking of property. Such an action does not lie under 42 U.S.C. § 1983. *See Cisneros v. Cavell*, 437 F.2d 1202, 1203 (3 Cir. 1971); *Howard v. Higgins*, 379 F.2d 227, 228 (10 Cir. 1967).

■ Similarly, with respect to the alleged confiscation of 50 stamped envelopes, defendants contend that only embossed envelopes may be sent to an inmate and, therefore, that the alleged confiscation of stamped envelopes was pursuant to prison regulations. Although the Court feels that this semantic distinction standing alone cuts too fine and imposes too heavy a burden on a prisoner drafting his own pleadings, here plaintiff has not filed any supplemental materials to refute defendants' contention that he received stamped, not embossed, envelopes. Therefore, the Court finds that this claim is also merely an action for the taking or loss of property and cannot properly be brought under the Civil Rights Act. Accordingly, defendants' motion for summary judgment with respect to the confiscation of plaintiff's personal property will be granted.

### 3. Denial of Requests to Attend Jewish Services

■ In its order dated April 2, 1975, the Court permitted plaintiff to substantiate his claim that he had been denied the opportunity to attend Jewish services by bringing before the Court evidence of specific instances wherein his requests to attend such services were denied. Plaintiff has not done so. Defendant Takahashi, the Correctional Counselor for X-Wing, stated in an affidavit that Jewish services are available on request through the counselor of the wing, and that plaintiff never made any such requests. This statement stands unrefuted. Accordingly, the motion for summary judgment on this claim will be granted. *See Allison v. California Adult Authority*, 419 F.2d 822, 823 (9 Cir. 1969) (failure to particularize a civil rights complaint upon order of the Court is ground for dismissal).

### 4. Censorship of Mail

With one exception discussed below, plaintiff has also failed to set forth in detail specific instances of mail censorship. Each of the defendants named in the mail censorship claims has filed an affidavit denying that he ever participated in the alleged censorship. As plaintiff has not substantiated his general allegations of censorship, defendants' motion for summary judgment, except as discussed below, will be granted.

The one exception concerns plaintiff's claim that October 11, 1974, defendant Pearson told him that defendant Christensen had ordered that a written communication bearing the return address of Amanda Blair be withheld from plaintiff on the ground that its content was "inflammatory". Plaintiff refused to elect one of the alternative dispositions for disapproved incoming mail pursuant to prison regulations (Institution Order #76) and the letter was subsequently destroyed. Defendant Pearson has filed an affidavit substantially confirming plaintiff's allegations, in particular that the basis for disapproval was that the letter was deemed inflammatory. Defendant Christensen has also filed an affidavit stating that the envelope contained one copy of *Amanda Blair's Friendship Club*, Volume I, Number 8. One article in that newsletter was authored by George Hammond, an inmate in X-Wing, who discussed his personal situation and the X-Wing program. Christensen states that in his opinion that article could "conceivably jeopardize the security of the wing and/or draw complications relative to his [Hammond's] own safety." Affidavit of Alf Christensen, at 1. Christensen brought the letter to the attention of the Unit II staff, which decided to withhold the newsletter from plaintiff.

Defendants' own account of this incident causes the Court concern for two reasons. First, it seems clear that the disapproval of plaintiff's letter was not obtained pursuant to prison regulations. Institution Rule 13, entitled "Disposition of Questionable Incoming Publications", as set forth in Institution Order #76 provides that:

"If the designated Unit staff member determines that the material is obscene or of such a nature that it might threaten the security and/or safety of the institution, he will refer it to the Unit Program Administrator, who will in turn forward it to the Associate Superintendent with a recommendation for its final disposition."

Here defendants apparently failed to forward plaintiff's letter to the Associate Superintendent. The disapproval of the newsletter was thus apparently based solely on the decision of the Unit II staff.

Secondly, the affidavits submitted by plaintiff, by other X-Wing inmates, and by defendant Pearson tend to establish that the purported ground for the disapproval of the newsletter was that its content was inflammatory. As such, the disapproval contravenes the teaching of *Procunier v. Martinez*, 416 U.S. 396, 412–415, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). Specifically invalidated in *Martinez* were the former regulations of the California Department of Corrections which authorized, *inter alia*, censorship of statements that "unduly complain" or "magnify grievances", and of expressions of "inflammatory political, racial, religious or other views". As the Court noted,

"These regulations fairly invited prison officials and employees to apply their own personal prejudices and opinions as standards for prisoner mail censorship. Not surprisingly, some prison officials used the extraordinary latitude for discretion authorized by the regulations to suppress unwelcome criticism." 416 U.S. at 415, 94 S.Ct. at 1812.

The Court has independently reviewed the article authored by George Hammond, attached to defendants' motion for summary judgment. The Court is aware that prison officials must be accorded some discretion in anticipating the probable consequences of allowing certain speech in a prison environment, *Procunier v. Martinez, supra,* 416 U.S. at 414, 94 S.Ct. at 1800. Here, however, the nature of the questioned article; the affidavits submitted by plaintiff, by other inmates, and by defendants themselves; and the fact that the prison upper staff, once given the opportunity pursuant to prison regulations to review the newsletter, approved it for distribution; at a minimum permit the inference that the standards and procedures used by prison officials in this particular instance of mail censorship do not pass constitutional muster.

■ Nevertheless, the Court does not feel that the circumstances surrounding this one instance of mail censorship justify granting plaintiff the relief he seeks. The conduct complained of involved a single, isolated instance of mail censorship. There is no suggestion that that event is part of a broader plan or course of conduct to censor plaintiff's mail unconstitutionally or that withholding that newsletter from plaintiff was anything except an honest error on the part of some prison officials who were apparently still unfamiliar with the relatively new post-*Martinez* prison regulations and constitutional standards. Any formal injunctive relief would thus clearly be inappropriate. Moreover, in light of the fact that that issue of the newsletter was subsequently approved for distribution and, indeed, that a quantity order placed by Hammond was passed around X-Wing, the Court concludes that plaintiff has not substantiated his claim for monetary damages, either actual or punitive. Accordingly, while the Court is inclined to accept plaintiff's account of this incident of censorship, his claim for relief will be dismissed. *See Northern v. Nelson*, 315

F.Supp. 687, 688 (N.D.Cal.1970), *aff'd*, 448 F.2d 1266 (9 Cir. 1971).

### 5. Access to the Prison Law Library

Plaintiff has not complied with the order of the Court, dated April 2, 1975, requiring him to particularize his allegation that he has been denied adequate access to the prison law library. Although defendants have not supplemented their evidentiary materials with library records which would directly refute plaintiff's general assertions, they have submitted the affidavit of the prison librarian, who stated that the average length of time required to receive a requested book in X-Wing is one day, and that books may be retained for three days. As plaintiff has submitted no evidentiary material suggesting that these general procedures were not followed when he submitted a library book request, defendants' motion for summary judgment on this claim will be granted.

### 6. Denial of Speedy Duplication of Legal Materials

Plaintiff contends that in Feburary, 1974, defendant Takahashi obstructed plaintiff's efforts to obtain photocopies of his amended complaint in this action, needed for filing with the Court. Takahashi stated in an affidavit that he received papers for duplication from plaintiff, but that the materials were unintentionally misplaced after he delivered them to the section responsible for duplicating materials. After approximately one week, plaintiff's papers were located, at which time Takahashi personally duplicated the materials for plaintiff.

While prisoners have a right of access to the courts which may not lightly be infringed by the State, *see Johnson v. Avery*, 393 U.S. 483, 490, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969); *Corby v. Conboy*, 457 F.2d 251, 253 (2 Cir. 1972), the Constitution requires no more than *reasonable* access to the courts. *Knell v. Bensinger*, 489 F.2d 1014, 1017 (7 Cir. 1973); *Dewitt v. Pail*, 366 F.2d 682, 685 (9 Cir. 1966). *See, e. g., Leeper v. Birzgalis*, 314 F.Supp. 808 (W.D. Mich.1969) (lack of a typewriter does not deny access to courts); *Brown v. Sielaff*, 363 F.Supp. 703, 707 (W.D.Pa. 1973) (lack of the most up-to-date law books and facilities to reproduce documents does not deny access to courts). In the instant case plaintiff has not alleged, nor is there any indication for believing, that Takahashi deliberately or maliciously intended to delay the duplication of plaintiff's legal materials. The Court holds that plaintiff was not unreasonably denied access to the courts. Defendants' motion for summary judgment on this claim will be granted.

### 7. Threats intended to Induce Plaintiff to Terminate this Lawsuit

Plaintiff has alleged that defendants Takahashi and Van Dyke threatened him with punishment, harassment, and a denial of parole unless plaintiff promptly discontinued the instant civil rights action. Both defendants denied ever threatening plaintiff. In its order dated April 2, 1975, the Court stated that when it ordered service of process based upon these allegations, it did so in the context of alleged conduct by various defendants tending to indicate a denial of access to the courts. Having now concluded that plaintiffs' other claims do not establish that he has been denied access to the courts, what remains for consideration is whether the allegations of threats, standing alone, would state such a claim.

Defendants have argued that mere threatening words do not state a claim for denial of access to the courts and have cited several cases purportedly in support of this position. However, many of those cases hold only that words or threats do not amount to an actionable *assault* under § 1983. *Jafree v. Scott*, 372 F.Supp. 264, 274 (N.D.Ill. 1974); *Fidtler v. Rundle*, 316 F.Supp. 535, 536 n. 1 (E.D.Pa.1970), *rev'd on other grounds*, 497 F.2d 794 (3 Cir. 1974); *see also Bolden v. Mandel*, 385

F.Supp. 761, 763 (D.Md.1974); *Jones v. Superintendent*, 370 F.Supp. 488, 491 (W.D.Va.1974). More to the point are two cases cited by defendants wherein punishment or retaliation was threatened in order to discourage access to the courts, *United States ex rel. Smith v. Heil*, 308 F.Supp. 1063, 1067 (E.D.Pa. 1970), and *Reynolds v. Swenson*, 313 F. Supp. 328, 330 (W.D.Mo.1970).

In *Heil*, plaintiff alleged that his parole officer threatened to revoke his parole if plaintiff sued police officers for damages for an injury which occurred when plaintiff was allegedly falsely arrested. The court distinguished actual *obstruction* of an individual's access to a federal court to vindicate a federal claim —which would state a claim under the Civil Rights Act—from a threat of *punishment* for asserting one's constitutional right of access to the courts. Finding no case treating the precise question before it, the *Heil* court analogized plaintiff's claim to a common law action for damages for a civil assault. Noting that at common law no remedy was afforded the victim of a "verbal" assault, and finding no persuasive reason why a different rule should obtain under the Civil Rights Act, the court concluded that plaintiff had not stated a civil rights claim.

In *Swenson*, a prisoner alleged that prison authorities had threatened him with punishment and had informed him that he would receive no medical attention because of his pending lawsuits. The court held that:

"These allegations alone do not state a claim under the Federal Civil Rights Act, either as cruel and unusual punishment or otherwise, where the record shows that plaintiff has in fact received medical treatment for his broken 'hand' and his asthma * * * ." *Reynolds v. Swenson, supra*, 313 F.Supp. at 330.

The court did not hold that, as a matter of law, a threat intended to restrain a person's resort to federal court does not give rise to a claim under the Civil Rights Act.

The distinction between actual obstruction of access to the courts on the one hand, and threatened punishment for resort to the courts on the other, is not as clear to this Court as it was to the *Heil* court. Furthermore, while the analogy the *Heil* court drew to the common law action for damages for a civil assault may fit accurately in some factual situations, the Court is concerned that threats of punishment by prison officials, even unaccompanied by any actual punishment, may under some circumstances have a chilling effect on the exercise of a prisoner's constitutional rights. Bearing in mind the formidable authority and discretion necessarily accorded prison officials, and the rigid structure of the prison environment, the Court believes that it is reasonable to envision a situation where threats of future punishment could so intimidate a prisoner that he would feel compelled to forego the exercise of his right to seek judicial protection of his constitutional rights. Thus, the Court feels that under certain circumstances threats of future punishment may rise to the level of a denial of a prisoner's constitutional right of access to the courts.

Here, however, the record reflects only petitioner's conclusory allegations that he was threatened with punishment for prosecuting the instant civil rights action. These allegations are totally inadequate for establishing the claimed denial of constitutional rights and defeating defendants' motion for summary judgment on this point, especially in light of the fact that defendants Takahashi and Van Dyke have both stated in their sworn affidavits that they never threatened plaintiff, either with respect to this action or at any other time. Furthermore, plaintiff's own litigious history in this court and in state courts—more than a dozen petitions for habeas corpus in addition to other actions and petitions—belies his contention that his right of access to the

courts has been obstructed. *See Conway v. Oliver*, 429 F.2d 1307, 1308 (9 Cir. 1970) ; *Wilson v. Prasse*, 404 F.2d 1380, 1381 (3 Cir. 1968). Accordingly, defendants' motion for summary judgment with respect to this claim will be granted.

It is hereby ordered that defendants' motions for summary judgment on all claims are granted. Counsel for defendants should prepare an appropriate form of judgment in accordance with this memorandum of opinion.