**James Martin HUDSPETH, Appellant,**

v.

**Donald FIGGINS, Sergeant Nesselrodt, Correctional Officers of Virginia Department of Corrections Field Unit # 30, Appellees.**

No. 77–1442.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 10, 1978.

Decided Oct. 5, 1978.

K. K. Hall, Circuit Judge, dissented and filed opinion.

Noel H. Thompson, Arlington, Va., for appellant.

Burnett Miller, III, Asst. Atty. Gen., Richmond, Va. (Anthony F. Troy, Atty. Gen. of Virginia, Richmond, Va., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, and BUTZNER and HALL, Circuit Judges.

PER CURIAM:

Hudspeth's § 1983 complaint was dismissed for failure to state a claim upon which relief could be granted. We reverse, for, liberally construing Hudspeth's *pro se* complaint, as we must under *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), we think he stated a claim of constitutional deprivation.

Hudspeth, a Virginia prisoner, claims that the two defendants, institutional officers, interfered with his access to the courts, placed his life in danger, and subjected him to cruel and unusual punishment. These claims arise out of two incidents. The first one is described in the complaint in the following language:

I was standing on the front steps of field unit # 30, Fairfax, Virginia, when penal system officer, Donald Figgins, related the following to me:

"The courts are not going to rule in your favor. Before they will do that, they will pay five thousand dollars to an officer to shoot you and make it look like an accident."

He then emphasized his point by putting forth his left hand and slapping it with his right hand saying:

"Yes, five thousand in the hand and one morning you'll get orders to report to work on a gun gang."

Then he patted his side where a firearm is normally worn and turned and walked away.

Hudspeth's hearing was impaired. Allegedly because of that, Hudspeth was assigned to an unguarded work detail within the correctional institution. He alleges, however, that, as predicted by Figgins, Sergeant Nesselrodt ordered him transferred to a road gang under the supervision of two armed guards. He alleged that he feared for his life as a result of an "accident" while working with the road gang, that the threat and the transfer were intended to limit his right of access to the courts, to endanger his life, and to subject him to mental anguish.

There was an institutional investigation which resulted in a determination that allegations about the conversation with Figgins were based upon actual fact, and that Figgins' employment by the Department of Corrections had been terminated. Those and all other allegations must be accepted as true since the complaint was dismissed for failure to state a claim. *Jenkins v. McKeithen*, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404.

When a court is asked to appraise the legal sufficiency of a complaint by a motion under Rule 12(b)(6), it must follow the accepted rule that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). This "concededly rigorous standard," *Hospital Building Co., supra*, applies to *pro se* inmate complaints filed under 42 U.S.C. § 1983. *Haines v. Kerner, supra*; *Gordon v. Leeke*, 547 F.2d 1147, 1151 (4th Cir. 1978); *Wirth v. Surles*, 562 F.2d 319, 321 (4th Cir. 1977); *Johnson v. Mueller*, 415 F.2d 354, 355 (4th Cir. 1969). A *pro se* complaint must be read liberally, and such persons are not held to the strict pleading requirements otherwise required of attorneys. *Estelle v. Gamble*, 429 U.S. 97, 106–07, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Haines v. Kerner, supra*. Thus the power summarily to dismiss a prisoner's *pro se* complaint is limited.

State prisoners have a constitutional right of meaningful access to the courts which a state may not abridge nor impair; nor may it impermissibly burden its exercise. *Bounds v. Smith*, 430 U.S. 817, 823–24, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 576, 579, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Cruz v. Beto*, 405 U.S. 319, 321, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (per curiam); *Johnson v. Avery*, 393 U.S. 483, 485–87, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969); *Ex Parte Hull*, 312 U.S. 546, 549, 61 S.Ct. 640, 85 L.Ed. 1034 (1941); *Blanks v. Cunningham*, 409 F.2d 220 (4th Cir. 1969); *Coleman v. Peyton*, 362 F.2d 905, 907 (4th Cir. 1966). Once judicial proceedings have been commenced, the state may not punish a prisoner for having sought judicial remedies. *Russell v. Oliver*, 552 F.2d 115, 116 (4th Cir. 1977); *Haymes v. Montanye*, 547 F.2d 188 (2d Cir. 1976).

■ A threat of physical harm to a prisoner if he persists in his pursuit of judicial relief is as impermissible as a more direct means of restricting the right of access to the courts. Nor is it necessary that the prisoner succumb entirely or even partially to the threat. It is enough that the threat was intended to impose a limitation upon the prisoner's right of access to the court and was reasonably calculated to have that effect. *See Lingo v. Boone*, 402 F.Supp. 768, 775 (N.D.Cal.1975).

With the liberal construction to which it is entitled, we think the complaint states a claim against Figgins for his threat of physical harm if Hudspeth pursued his judicial remedies and, in light of that earlier threat, against Nesselrodt for transferring him to the road gang under the supervision of armed guards, if it can be proven that Nesselrodt knew of Figgins' threat.

But, of course, there would be no claim if Figgins intended his remarks as a joke, and Hudspeth understood them not to have been serious. If that were the case, however, it is unlikely that Figgins' employment would have been terminated.

■ Moreover, there may be a claim based upon the Eighth Amendment prohibition of cruel and unusual punishment. If Figgins and Nesselrodt were acting in concert, intentionally placing Hudspeth in fear for his life if he pressed his court actions that would inflict such suffering as to amount to unconstitutional punishment. The life of a prisoner is a dreary one of suffering, but the Constitution prohibits the infliction upon a prisoner of unnecessary suffering which is inconsistent with contemporary standards of decency. If Hudspeth can prove his claim, if Figgins and Nesselrodt were working in concert and Hudspeth's fear was real, the punishment inflicted was entirely gratuitous and unnecessary.

Of course, we hold only that Hudspeth should be given an opportunity to prove his claims. Whether or not he is ultimately entitled to any relief can then be determined upon an evidentiary record.

*REVERSED AND REMANDED.*

K. K. HALL, Circuit Judge, dissenting:

I must dissent from the majority opinion which holds that a single, patently incredible threat made by a correctional officer to an inmate, and subsequent administrative re-assignment of the inmate to a different work detail, state a claim of constitutional magnitude.

I.

## PLACING PETITIONER'S LIFE IN DANGER

The majority notes without discussing Hudspeth's claim that his life has been placed in danger by virtue of his re-assignment to a road work gang supervised by two armed guards. Hudspeth has previously raised this claim, *Hudspeth v. Bowles and Carey*, C/A No. 76–909–AM (E.D.Va. December 8, 1976) (appeal dismissed by agreement of the parties by order of this court of January 20, 1977), in the context of a malpractice claim against two prison physicians who certified that he was physically able to perform his assigned task as waterboy for the road crew.

An operation some months before had left Hudspeth with 60% hearing loss in one ear. The gist of his complaint in the malpractice action was that he might not hear orders given by the armed guards assigned to the road work gang, and thus be shot for disobeying; the gist of his revised complaint in the case before us is that the guards may carry out the threat made by Officer Figgins. Either contention is patently frivolous.

It should be noted that armed guards are a regular feature of prison life; there is no reason for this court to assume that their presence at the road work site was in any way unusual or threatening to Hudspeth. In the judgment of two prison doctors, Hudspeth was capable of performing his assigned job. No constitutional violation results from a prisoner's assignment to a particular job which he is capable of performing. *Cf., Cassidy v. Superintendent,*

*City Prison Farm, Danville, Va.*, 392 F.Supp. 330 (W.D.Va.1975). And federal courts have no authority to interfere with the administration of a state prison unless paramount federal constitutional or statutory rights are violated. *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Therefore I vigorously dissent from any implication in the majority opinion that Hudspeth has stated a viable claim of endangerment to his life.

## II.

### RIGHT OF ACCESS TO THE COURTS

The majority cites *Lingo v. Boone*, 402 F.Supp. 768, 775 (N.D.Calif.1975) for the proposition that a threat which is intended to impose a limitation upon a prisoner's right of access to the courts is impermissible. I have no argument with this statement of the law; however, an examination of *Lingo* demonstrates that it has no application to the case before us.

First, the threats made by correctional officers in *Lingo* were real and substantial: punishment and harassment by guards, and denial of parole. In contrast, the statement made by Officer Figgins was patently absurd: assassination by order of the Virginia Courts. Second, the court in *Lingo* found that Lingo's "litigious history . . . belie[d] his contention that his right of access to the courts ha[d] been obstructed," and accordingly denied relief. 402 F.Supp. at 775–76. In the case before us, the district court found that Hudspeth had commenced three separate lawsuits against prison officials since the date on which the threat was made; each of these cases was appealed to this court. *Hudspeth v. Blair*, No. 77–1441 (4th Cir., Nov. 2, 1977); *Hudspeth v. Superintendent, Unit # 30*, No. 77–8301 (pending before the court); *Hudspeth v. Bowles and Carey, supra*. In addition, he filed a petition for a writ of mandamus before the Supreme Court of Virginia. On these facts I cannot believe that Hudspeth can possibly make out a claim of deprivation of his right of access to the courts.

In similar vein, any constitutional claim against defendant Nesselrodt is frivolous. There is no allegation that Nesselrodt was in collusion with Figgins; his work reassignment of Hudspeth was made at least three weeks after the threat by Figgins, and after Hudspeth's treating physicians had certified that he was physically able to perform the allotted task; and again, any fears Hudspeth may have harbored about the routine practice of having an armed guard at the work detail was at best subjective and unfounded.

## III.

### CRUEL AND UNUSUAL PUNISHMENT

The majority also holds that Hudspeth may have stated a claim of cruel and unusual punishment. I cannot agree that the outrageous threat made to Hudspeth or his non-punitive re-assignment to a different work detail are "wanton infliction of unnecessary pain" or "inconsistent with contemporary standards of decency. . . ." *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S.Ct. 285, 290, 291, 50 L.Ed.2d 251 (1976). Furthermore, this isolated incident is without the ambit of *Woodhous v. Virginia*, 487 F.2d 889 (4th Cir. 1973), relied upon by Hudspeth.

If Hudspeth was actually fearful for his life—which is frankly incredible to me—then his reaction was totally unreasonable. In the tense and often hostile environment of a prison, regrettable and even reprehensible statements will be made by correctional officers. An isolated incident such as this one may be grounds for discipline of the officer, but, absent some compelling circumstances not present here, the incident will not be grounds for a claim of constitutional magnitude. I fear the flood of litigation under 42 U.S.C. § 1983 which may result from the majority's unwarranted solicitude of Hudspeth in this case.

In conclusion, even viewing the facts of this complaint under the standards of *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), I believe that he "can prove no set of facts in support of his claim

which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). I feel compelled to note also that there is no indication in this record that Hudspeth's life is "a dreary one of suffering," and I expect that this gratuitous comment in the majority opinion will be cited to this court in numerous prisoner petitions in the future.

I would affirm the well-reasoned decision of the district court, and I must strongly dissent.