**Plaintiff–Appellant,**

v.

**Otis TAYLOR, Deputy Sergeant, Defendant–Appellee.**

**No. 92–6648.**

United States Court of Appeals, Fourth Circuit.

Argued June 10, 1993.

Decided Nov. 9, 1993.

Rehearing In Banc Granted, Opinion Vacated June 10, 1994.

Leonard A. Feiwus, Student Counsel, Appellate Litigation Clinical Program, Georgetown University Law Center, Washington,

DC, argued (Steven H. Goldblatt, Director, Appellate Litigation Clinical Program, on the brief), for plaintiff-appellant.

Mark Douglas Stiles, Willcox & Savage, P.C., Norfolk, VA, argued (Conrad M. Shumadine, on the brief), for defendant-appellee.

Before HALL, PHILLIPS, and LUTTIG, Circuit Judges.

## OPINION

K.K. HALL, Circuit Judge:

Allain D. Norman appeals the district court's grant of summary judgment in favor of Deputy Otis Taylor in Norman's 42 U.S.C. § 1983 action alleging that Taylor violated his Eighth Amendment rights through the use of excessive force. Because we find that a genuine issue of material fact exists regarding the circumstances of Norman's claim, we reverse and remand.[1]

### I.

According to Norman, he was waiting to be processed for admittance to the Norfolk County (Virginia) jail on March 5, 1990, when he asked the inmate watchman for a drag of his cigarette. The moment Norman started to smoke, Taylor ran down the hallway at him and swung a set of keys on a brass ring at his face. After two misses, Norman was hit on his right hand, which he had raised to protect his face. Norman claimed that he immediately attempted to report the incident to the desk sergeant, but Taylor pushed him up against the wall and threatened to "run the cell keys threw [sic] my heart." As a result, Norman did not report the incident until later. When this action was filed some five and one-half months after the incident, Norman complained that his hand was still swollen and painful at times; in an affidavit dated March 4, 1992 (two years after the incident), Norman alleged that the pain in his thumb persisted and that he did not have full use of his right hand. Two inmates who claim to have been eyewitnesses filed affida-

vits supporting Norman's claim that Taylor ran up and swung the keys at Norman's face and, later, pushed Norman up against the wall when he (Norman) attempted to speak to another jail official. One of the affiants also corroborated Norman's allegation that Taylor verbally threatened him.

Taylor's affidavit described the incident differently. He stated that Norman was not only smoking but yelling as well, thus making it difficult for correctional officers to carry out the roll call of inmates leaving the jail that day. Taylor claimed that he told Norman to be quiet and closed the door between Norman and the area where the roll call was being held, but he denied that he ever threatened or hit Norman. The jail's classification officer submitted an affidavit stating that Norman's record showed no requests for medical treatment for his thumb. Norman was transferred to another facility in September, 1990.

The district court found that Norman did not adequately refute Taylor's statement that he was causing a disturbance, thus, force was necessary and the amount of force was not excessive under the circumstances. Summary judgment was entered for Taylor, and Norman appeals.

### II.

■ Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986) (citation omitted). We review the district court's grant of summary judgment *de novo. Farwell v. Un,* 902 F.2d 282, 287 (4th Cir.1990).

---

1. In his pro se complaint, Norman also raised a claim of deliberate indifference to his medical needs. In support of this claim, Norman alleged that he requested medical treatment for his hand more than 15 times but that his requests went unheeded. The district court dismissed this claim on the ground that the defendant correctional officer had no responsibility for medical treatment at the jail. Appointed counsel has abandoned this issue on appeal.

In an excessive force case, the need for the use of force and the relationship between the force used and the need are factors that are relevant to the ultimate determination of "whether the use of force was wanton and unnecessary ..." *Hudson v. McMillian,* 503 U.S. 1, ——, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992). Whether or not Norman was causing a disturbance is, then, clearly a material fact. The district court's conclusion that there was no genuine issue regarding this matter is based on a narrow reading of the record.

It is true that Norman failed to expressly deny that he had created a disturbance. The district court gave the required *Roseboro* notice [2] inviting Norman to submit affidavits "that show that [the parties] truly disagree about one or more important facts present in this case," but what turned out to be the pivotal question—were you creating a disturbance?—was never directly posed to him. Moreover, because Norman was not represented by counsel,[3] his pleadings should be viewed with a certain degree of latitude. *See Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (inmate's pro se complaint held to less stringent standards). At the very least, the court should have allowed Norman to clarify his position on this important factual matter. *See Carter v. Hutto,* 781 F.2d 1028 (4th Cir.1986) (where pretrial order did not inform inmate of required degree of specificity for summary of testimony from potential witnesses, the court should have informed the inmate of this deficiency and afforded him the opportunity to cure). In any event, the logical inference from the materials submitted by Norman is that the only catalyst for the attack was Norman's cigarette.

Even if we assume that Norman was not creating a disturbance, a knottier issue remains—are the injuries claimed by Norman serious enough to support a claim of a constitutional violation? We believe they are.

### III.

To succeed on an Eighth Amendment claim, an inmate must prove that prison officials "inflicted unnecessary and wanton pain and suffering." *Whitley v. Albers,* 475 U.S. 312, 320, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986). In the excessive force context, the Supreme Court has determined that "the core judicial inquiry is that set out in *Whitley:* whether force was applied in a good-faith effort to maintain or restore discipline, or sadistically and maliciously to cause harm." *Hudson,* 503 U.S. at ——, 112 S.Ct. at 999. Eighth Amendment claims comprise an objective component (was the harm sufficiently serious?) and a subjective component (did the official act with a sufficiently culpable state of mind?). *Wilson v. Seiter,* 501 U.S. ——, ——, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991). Taylor contends that, regardless of the need for force or of his state of mind,[4] the *injuries* alleged by Norman were not sufficiently serious to satisfy the objective prong.

The Eighth Amendment proscribes wanton infliction of "pain" and the malicious use of force to cause "harm," although *de minimis* uses of force are excluded from constitutional recognition. *Hudson,* 503 U.S. at ——, 112 S.Ct. at 1000. The "harm" alleged by Norman includes the initial and lingering pain to his hand, the physical injuries sustained (the swelling and decreased mobility of the hand), and any psychological

---

2. *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir. 1975).

3. Counsel was appointed only after the appeal had been filed. Norman may have received some assistance from a student involved in a postconviction assistance project at a Virginia law school, but this is no reason to bend the rules pertaining to pro se litigants.

4. Under Norman's version of the facts, Taylor needed only enough force to stop Norman from smoking. Accepting this version of events, as we must, the act of swinging heavy, brass keys at

Norman's face clearly exceeded the amount of force required. It is hard to imagine a sound penological justification for using *any* physical force, without any prior warning, for such a minor violation of the jail's rules. The actions of Officer Taylor, as described by Norman, could certainly support a finding that he acted "maliciously and sadistically to cause harm." At this point, Norman has satisfied the subjective component. *See Miller v. Leathers,* 913 F.2d 1085, 1089 (4th Cir.1990) (en banc) (if evidence supports "reliable inference of wantonness," prima facie case is established), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991).

injury flowing from the threats by Taylor.[5] The question before us is whether these injuries, viewed apart from the circumstances of their infliction, are so insignificant as to be unable to support an Eighth Amendment claim.

The lack of "serious injury" is not fatal to an excessive force claim. *Id.*, at ——, 112 S.Ct. at 999 ("The absence of serious injury is … relevant to the Eighth Amendment [excessive force] inquiry, but does not end it").[6] Although the Court stated that "contemporary standards of decency always are violated" when "prison officials sadistically and maliciously use force to cause harm"—in other words, when the subjective component is satisfied—*Hudson* does not hold that such a claim may be stated in the absence of *any* injury or one of *de minimis* proportions. *Id.* at ——, 112 S.Ct. at 1000; *see Wisconsin Dep't of Revenue v. Wrigley*, 505 U.S. ——, ——, 112 S.Ct. 2447, 2458, 120 L.Ed.2d 174 (1992) (citing *Hudson* for the proposition that *de minimis non curat lex* applies to all legal enactments). Although the injuries claimed by Norman are clearly something more than those from a "push or shove," [7] they are less severe than the injuries suffered by the inmate in *Hudson* (bruises, swelling, loosened teeth and a cracked

dental plate). Norman's injuries fall in that largely uncharted territory lying below "significant" or "serious."

We find no occasion to dissect the various correlations between harm and injury, force and injury, injury and pain, et cetera, and how each fits into the constitutional analysis of excessive force cases.[8] For the purposes of the appeal before us, it suffices that we find the *injury* alleged by Norman, including both the physical and psychological aspects and the initial and continuing pain, to be beyond the *de minimis* level. The objective component has been met at the summary judgment level. How the extent of this injury informs the inquiry into the subjective component is a matter left for further exploration on remand.

## IV.

We reverse the grant of summary judgment on the excessive force claim and remand for further proceedings.

*REVERSED AND REMANDED.*

LUTTIG, Circuit Judge, dissenting:

I disagree with the majority's holding that appellant raised a genuine issue of material fact as to whether he was causing a distur-

---

5. The alleged threats directed at Norman are relevant to this inquiry as well. *See Hudspeth v. Figgins*, 584 F.2d 1345 (4th Cir.1978) (noting that an Eighth Amendment claim may be stated by an inmate who alleged that two prison guards threatened his life), *cert. denied*, 441 U.S. 913, 99 S.Ct. 2013, 60 L.Ed.2d 386 (1979); *see also Hudson*, 503 U.S., at ——, 112 S.Ct. at 1004 (Blackmun, J., concurring) ("'Pain' in its ordinary meaning surely includes a notion of psychological harm") and *Northington v. Jackson*, 973 F.2d 1518 (10th Cir.1992) (holding that inmate stated an Eighth Amendment excessive-force claim by alleging that a prison official put a gun to his head and threatened to kill him).

6. In the context of a conditions-of-confinement or medical treatment case, the objective injury threshold is quite high, while the subjective component is lower than in excessive force cases. *See, e.g., Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir.1991) (to establish a *prima facie* conditions-of-confinement case, inmate must demonstrate a serious deprivation of a basic human need and deliberate indifference to conditions by prison officials).

7. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973).

8. For instance, while there is often a fairly direct correlation between the amount of force used and the resulting injuries, such is not always the case. *See Strickler v. Waters*, 989 F.2d 1375, 1381 n. 6 (4th Cir.1993) (noting that injury can be inflicted without pain and pain inflicted without injury). Compounding the problem is the Supreme Court's tendency to use the concepts of "*de minimis* injuries" and "*de minimis* uses of physical force" almost interchangeably. *See Hudson*, 503 U.S. at ——, 112 S.Ct. at 1000 (holding that the extent of the injuries received, which the circuit court found to be minor, was no basis for dismissing the § 1983 claim because "the blows directed at Hudson, which caused bruises, swelling, loosened teeth, and a cracked dental plate, are not *de minimis* for Eighth Amendment purposes"); *see also Strickler*, 989 F.2d at 1381 n. 8 (noting the interchangeable use of the terms).

bance and thus whether some force was justified under the circumstances. I also disagree with the majority's conclusion in *dicta* that any injury sustained by appellant was more than *de minimis* and therefore cognizable under the Eighth Amendment. Accordingly, I dissent.

## I.

In the only holding by the majority, it reverses the district court's award of summary judgment in the defendant's favor on the niggling ground that the district court "never *directly* posed to [appellant]" the question of whether he was creating a disturbance. *Ante* at 1081 (emphasis added). The district court, however, was under no obligation to pose this question to the plaintiff in ruling on the summary judgment motion, and the majority offers no authority whatsoever (and little discussion) in support of its contrary conclusion. In any event, as implied by the majority's forced holding that the district court did not "directly" ask this question, the district court in fact did ask appellant the question that it is now reversed for not asking more directly. In his affidavit appended to his motion for summary judgment, Sergeant Taylor explicitly represented that "Norman became disruptive" and "began yelling at and to the inmates being assembled outside the passageway to be taken to court," J.A. at 34–35,[1] and that his (Taylor's) actions were taken to "maintain[ ] discipline and security, and *not* 'maliciously and sadistically for the very purpose of causing harm,' " *id.* at 23 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied sub nom. John v. Johnson*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)). The district court

informed appellant, who in any event was represented by counsel, that in order to avoid summary judgment he was required to "set out ... *specific facts* that show that [he] and the defendant truly disagree[d] about *one or more important facts* present in this case." *Id.* at 46 (emphasis added). The court further instructed, in significant language not mentioned by the majority, that "the plaintiff, in his affidavits and exhibits, should address himself, *as clearly as possible*, to the issues and facts stated in the complaint and *in the affidavits of the defendants*." *Id.* at 46–47 (emphasis added).[2]

As appellant and the majority acknowledge, despite these pointed admonitions from the court, appellant never disputed, in either his original submissions or his supplemental filings,[3] the material allegation that he was being disruptive at the time of the alleged incident. Nor, as the district court specifically found, *id.* at 77 n. 3, were Sergeant Taylor's averments challenged by either of appellant's fellow inmates who submitted affidavits in support of his assertion that Taylor struck him. *See id.* at 68–70. Under these circumstances, the district court properly concluded that there existed no material dispute as to whether appellant was creating a disturbance at the time of the alleged incident.

## II.

Although it reverses the district court's award of summary judgment because an issue of material fact existed on the question of whether appellee's actions were prompted by appellant's disturbance, the court proceeds in *dicta* to conclude also that appellant's alleged injury, although not significant or serious,

---

1. Taylor's affidavit explained that appellant's conduct was "disruptive to prison security as the deputies were attempting to create an accurate list of the inmates being transported to court that day," a list that was "verified through a roll call procedure." *Id.* at 35.

2. Counsel for appellant disingenuously argues that the district court instructed appellant "not [to] respond or refer to Taylor's affidavit directly." *See* Reply Br. at 2 n. 1. It did not so instruct appellant, as is clear from the full instruction, which was misquoted by appellant so as to omit that appellant was specifically in-

structed by the court to respond to the "affidavits of the defendants." *See* J.A. at 47.

3. When appellant originally submitted his summary judgment materials without original signatures and notarization, the district court provided him first thirty days, and then twenty additional days, to refile those documents. *Id.* at 48–49. After appellant responded to Sergeant Taylor's summary judgment motion, he requested additional time to file supplemental affidavits, because he had obtained assistance from a postconviction project. *Id.* at 60. The court, over objection, granted this motion as well. *Id.* at 62.

was more than *de minimis* for purposes of the Eighth Amendment. *Ante* at 1082.[4] This unnecessary discussion is especially unfortunate, because there is even more reason to affirm the district court's grant of summary judgment in this regard.

*Appellant's only claim is that he has a sore thumb, and there is not a single piece of record evidence even to support this claim.* J.A. at 77 (district court finding that appellant failed to produce any corroborating evidence of his alleged injury). Indeed, not only did appellant fail to proffer *any* evidence of injury to rebut the independent medical provider's affidavit stating that a search of Norman's medical files revealed no evidence that he had been injured, *see id.* at 27, there is an abundance of record evidence that there was no injury at all. Most significantly, the record shows that appellant had at least three separate medical examinations, including one the very day of the alleged incident, none of which disclosed *any* injury to his hand—facts not mentioned by the majority. *Id.* at 30–33.[5] Not surprisingly, as the majority impliedly acknowledges, there is a similar absence of evidence of psychological injury.

### III.

In sum, as the district court recognized, this is precisely the kind of case for which Rule 56 was intended. Appellant chose to rest entirely on the unsupported allegations in his pleadings in response to proffered evidence in support of summary judgment. As a consequence, not only was there no factual dispute that appellant was creating a disturbance, there was no evidence that he was even injured. Under the most elementa-

ry principles governing application of Rule 56, appellee is entitled to judgment.

---

4. The majority also states in *dicta* that, even assuming that there was no injury at all, the mere act of swinging the keys *at* Norman is itself sufficient force to defeat summary judgment on a claim that the actions were taken "maliciously and sadistically to cause harm." *Ante* at 1081 n. 4. Merely swinging keys at an insurgent prisoner in an effort to restore order cannot, under any reasonable reading of the Supreme Court's or this court's precedent, give rise to an Eighth Amendment violation.

5. Appellant's original complaint stated that he had submitted fifteen to sixteen requests for medical attention. He could not produce a single one of those requests or any evidence that they were actually submitted. In the only material submitted beyond appellant's complaint (and affidavit, which again is merely a restatement of the complaint's allegations), appellant complained in an Inmate Grievance Form that a prison doctor thought that he was "faking" his hand injury. *Id.* at 66.