

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-11-2007

# Booth v. King

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1552

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Booth v. King" (2007). *2007 Decisions*. Paper 1323.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1323

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 06-1552
_____

TIMOTHY BOOTH,

Appellant

v.

LEON KING, Acting Commissioner; COSTELLO, Former Commissioner;
PEALE, Major; MERCER, Major; OSBOURNE, SGT.; MCNALLY, SGT.;
PINSTON, Ms. Social Worker; BROWN, C/O; JACKSON, C/O; CARTER, C/O;
DONLEEVLY, Warden; BROKENBURGH, Major; WORSELY, C/O; HARRIS, SGT.;
TERRY, C/O; YOUNG HEARING EXAMINER, Ms.; MORRISON, C/O;
STOOLE, LT.; SHOULIN, Warden; WHEELER, C/O

_____

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civil No. 03-cv-00802)
District Judge:  Honorable Stewart Dalzell

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 7, 2007

Before:  RENDELL, COWEN and VAN ANTWERPEN, <u>Circuit Judges</u>

(Filed  April 11, 2007)
_____

OPINION
_____

PER CURIAM

Timothy Booth appeals pro se from the order of the United States District Court for the Eastern District of Pennsylvania granting summary judgment in the defendants' favor in this civil rights action.

The factual and procedural history of this case need not be discussed at length here; it is well-known to the parties, and is set forth in both District Court opinions. In 2002, Booth was an inmate at Philadelphia's Curran-Fromhold Correctional Facility ("CFCF"). Booth told CFCF's Commissioner Leon King that, unless King addressed several outstanding grievances by January 21, 2003, he would file a civil rights suit. On January 2, 2003, Booth was transferred, at his own request, to Philadelphia's House of Corrections ("HOC"). He almost immediately filed a grievance with Rodney Brockenbrough, HOC's Deputy Warden, informing him of the deadline imposed on King. The week of January 9, 2003, five HOC officers (Harris, Morrison, Worsley, Terry, and Stolle) conducted or became involved with a routine search of Booth's cell. Booth confronted one of the officers who was reading his legal mail. This confrontation led to a misconduct charge and the confiscation of property, including religious and legal material. The punishment was upheld by Administrative Hearing Officer Allison Young. Upon his release from segregation, most, but not all, of Booth's property was returned. Booth alleges another incident where correctional officer Terry read his mail outside of his presence.

After exhausting his administrative remedies, Booth filed a § 1983 complaint alleging that, from August 2002 to early January 2003, the defendants denied him access to the law library and opened his mail outside of his presence, denied him medication for diabetes, subjected him to allegedly inhumane prison conditions when he was in disciplinary segregation, illegally searched his cell and seized his legal and religious materials, prohibited him from calling witnesses at his disciplinary hearing and failed to respond to his grievances, discriminated against him based on his religious beliefs, and retaliated against him for filing grievances and for threatening to sue the defendants civilly. After discovery was completed, the defendants filed motion for summary judgment, to which Booth responded.

In 2004, District Judge Brody granted the defendants' motion for summary judgment as to all claims except the retaliation claim. Judge Brody ruled that, absent any evidence of actual injury, the defendants did not deprive Booth of access to the courts by denying him access to the law library or in opening his legal mail outside of his presence. Booth's Eighth Amendment claims were also ruled to be lacking in merit because there was no record evidence as to deliberate indifference to Booth's health and safety. Furthermore, Booth's Eighth Amendment prison conditions claim failed because none of the conditions complained of constituted serious denial of the minimally civilized measure of life's necessities. Judge Brody held that Booth's illegal search and seizure claim failed because he has no Fourth Amendment right with respect to prison cell

3

searches under <u>Hudson v. Palmer</u>, 468 U.S. 517 (1984). Booth's related Fourteenth Amendment unlawful seizure of property claim also failed because adequate post-deprivation remedies were available to Booth. The court held that Booth's substantive due process claim, a conglomerate of all of his other claims, did not amount to "conscience-shocking" behavior under the Fourteenth Amendment. The court also ruled that Booth's fifteen-day confinement in punitive segregation following disciplinary action did not constitute atypical and significant deprivation and thus, did not implicate any liberty interest under <u>Sandin v. Conner</u>, 515 U.S. 472 (1995). As for Booth's claim of discrimination based on his Muslim beliefs, Judge Brody determined that Booth lacked standing to bring the claim based on his sole factual allegation that unnamed correctional officers confiscated kufis from other Muslim prisoners, but did not take his.

The matter was reassigned to District Judge Dalzell after Judge Brody recused herself. The defendants filed a second motion for summary judgment on the retaliation claim, attaching additional briefing and exhibits. Judge Dalzell granted the defendants' motion, concluding that, beyond the coincidence of timing, there was no evidence that the search, punishment, and confiscation of property conducted in 2002 and early 2003, were in retaliation for Booth's letters to King and Brockenbrough. Booth timely appealed.

We have jurisdiction pursuant to 28 U.S.C. §§ 1291. We exercise plenary review over the District Court's orders granting summary judgment. <u>See</u> <u>Pub. Interest Research Group of N.J., Inc. v. Powell Duffryn Terminals, Inc.</u>, 913 F.2d 64 (3d Cir. 1990).

4

Summary judgment shall be granted when "no genuine issue [exists] as to any material fact and [when] the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We view the facts in the light most favorable to the nonmoving party and we draw all inferences in that party's favor. See Reitz v. County of Bucks, 125 F.3d 139, 143 (3d Cir. 1997).

## I.

First, we will address the District Court's denial of Booth's motion to amend the complaint to add a new defendant, Captain Lowell. The proposed amended complaint alleges that Lowell violated Booth's right to practice his religion when he disciplined Booth for calling an "Adhan" after the cell count on the evening of April 2, 2003. Booth asserts that Lowell retaliated against him for practicing his religion and for bringing a lawsuit against fellow corrections officers by placing Booth in administrative segregation for about two weeks in April 2003.

Rule 15 of the Federal Rules of Civil Procedure allows a plaintiff to amend his complaint once, without leave of court, "at any time before a responsive pleading is served..." Booth filed the motion on April 8, 2003, the day he signed the pleading and presumably submitted it to the prison mail system. At the time he filed the motion to amend, none of the defendants had filed responsive pleadings. Under Rule 15, Booth could have filed the amended complaint without the District Court's permission. Instead of allowing the amendment, however, the District Court denied Booth's Rule 15 motion.

We conclude that the District Court erred in denying Booth's motion, and thus, we will vacate the order denying amendment and remand for service of the amended complaint and further proceedings as to Captain Lowell.

## II.

As for the remaining defendants, we hold that the District Court correctly granted summary judgment on all claims, for the reasons fully explained in the District Court opinions issued in 2004 and 2005.[1]  Given the District Court's comprehensive treatment of Booth's claims, we will comment briefly only on the Eighth Amendment medical treatment and prison conditions claims and the retaliation claim.

Booth raised three alleged violations of the Eighth Amendment in his Complaint. He claimed that he was denied essential medicine, made to sleep in a cell with broken windows for fifteen days in disciplinary segregation, and was verbally assaulted and threatened by guards.  With respect to the deliberate indifference to his medical needs, "[i]t is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'"  Rouse v. Plantier, 182

---

[1]  The District Court rendered its opinion on Booth's legal mail claim before this Court rendered its decision in Jones v. Brown, 461 F.3d 353 (3d Cir. 2006) (holding that inmates have a First Amendment privacy right in their legal mail and that an inmate plaintiff need not show actual injury to make out such a claim).  Construing Booth's legal mail claim as a First Amendment privacy right claim, we conclude that it fails on qualified immunity grounds for the same reasons set forth in Jones.  Id. at 364.  An inmate's right to privacy in legal mail was not clearly established when the defendants opened Booth's mail outside of his presence in 2002-2003.

6

F.3d 192, 197 (3d Cir. 1999); see also White v. Napoleon, 897 F.2d 103, 108 (3d Cir.1990) (concluding that mere medical malpractice cannot give rise to a violation of the Eighth Amendment).  The protections afforded prisoners by the Due Process Clause of the Fourteenth Amendment are not triggered by the mere negligence of prison officials. See Daniels v. Williams, 474 U.S. 327 (1986).  Likewise, Eighth Amendment liability under 42 U.S.C. § 1983 requires "more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319 (1986).  Only "unnecessary and wanton infliction of pain" or "deliberate indifference to the serious medical needs" of prisoners is sufficiently egregious to rise to the level of a constitutional violation. White v. Napolean. 897 F.2d at 108-09 (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976)). Booth alleged that after he was given an insulin shot, a guard confiscated his diabetes medication for eight and a half hours, but left him with one packet, saying "take this one pack[.] It should do."  Booth does not claim that he was actually put in danger.  This conduct does not establish deliberate indifference.

Booth's prison conditions claim also fails.  The Eighth Amendment protects prison inmates from cruel and unusual punishment.  See e.g., Farmer v. Brennan, 511 U.S. 825 (1994).  However, not all deficiencies and inadequacies in prison conditions amount to a violation of an inmate's constitutional rights.  The Eighth Amendment is violated only where, viewing the totality of the conditions in the prison, the inmate's conditions of confinement, alone or in combination, deprive him of the minimal civilized measure of

7

life's necessities. Tillery v. Owens, 907 F.2d 418, 426-27 (3d Cir. 1990). Here, Booth's temporary confinement in a cell with broken windows for fifteen days does not amount to the kind of extreme deprivation required to make out a conditions-of-confinement claim. See e.g., Peterkin v. Jeffes, 855 F.2d 1021, 1026-27 (3d Cir. 1988) (holding that sleeping on a dirty mattress on the floor does not rise to the level of an Eighth Amendment violation); Brookins v. Williams, 402 F.Supp.2d 508 (D.Del. 2005) (finding no constitutional violation where, over a period of five days, a pre-trial detainee was placed in a cell with two other inmates, forced to eat near the toilet, and prohibited from exercise). Finally, absent any allegation of physical harm, the defendants' verbal threats do not amount to a constitutional violation. See Ivey v. Wilson, 832 F.2d 950, 954-955 (6th Cir. 1987) (holding that verbal abuse, alone, is not an Eighth Amendment violation); see also Balliet v. Whitmire, 626 F. Supp. 219 (M.D. Pa. 1986) (holding that use of profane and vulgar language by a state investigator during an interview is not a civil rights violation), aff'd, 800 F.2d 1130 (3d Cir. 1986) (Table).

As for the retaliation claim, we agree with the District Court that Booth has failed to provide any evidence that the parties responsible for searching his cell, confiscating his property, and approving the disciplinary sanction in January 2003, had any knowledge of the grievances he filed with prison administrators. Further, the administrators neither directed the search and seizure nor had knowledge that the search and confiscation occurred. While the timing of the incidents appears suspicious, this alone does not create

8

a showing of retaliation. This is especially true considering that Booth has filed innumerable grievances throughout his incarceration, making it less coincidental that an incident occurred after one of his filings.

Booth argues on appeal that Judges Brody and Dalzell exhibited bias in favor of the defendants, and that the defendants' second motion for summary judgment was procedurally barred. Both judges recused themselves out of an abundance of caution. Booth does not argue, and we find no evidence on this record, that either judge actually exhibited bias against Booth or displayed an appearance of impartiality in this case, and thus, recusal under 28 U.S.C. § 455(a) was not required. In support of his procedural bar argument, Booth contends that the defendants were prohibited from filing a second motion because their first summary judgment motion was granted in part in 2004. Summary judgment was denied as to the retaliation claim at that time. There is nothing in Fed. R. Civ. P. 56(a) that prevented the defendants from filing a second summary judgment motion on the retaliation claim where, as here, the motion contained additional affidavits or other evidence.

We have thoroughly reviewed the remaining arguments Booth makes on appeal and find them meritless. Accordingly, we will reverse the District Court's order denying Booth's Rule 15 motion and remand for further consideration by the District Court in accordance with this Opinion. We will affirm the judgment of the District Court in all other respects.