# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Rivera, : 
              Appellant : 
  : No. 1708 C.D. 2018
            v. : 
  : Submitted: November 15, 2019
T. Silbaugh, Michael Oppman, Mark : 
Capozza, and Dorina Varner : 

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ELLEN CEISLER, Judge

OPINION BY
JUDGE McCULLOUGH                       FILED: September 21, 2020

Michael Rivera (Rivera), *pro se*, appeals from the November 29, 2018 order of the Court of Common Pleas of Fayette County (trial court) that denied his application to proceed *in forma pauperis*, and *sua sponte* dismissed his civil rights complaint as frivolous pursuant to section 6602(e) of the Prison Litigation Reform Act (PLRA), 42 Pa.C.S. §6602(e).[1]

Rivera is an inmate currently incarcerated at Pennsylvania State Correctional Institution ("SCI")-Benner Township.[2] In mid-August 2017, Rivera received an "Unacceptable Correspondence Form" issued by defendant, T. Silbaugh

---

[1] The PLRA, 42 Pa. C.S. §§6601-6608, provides for "the manner in which prisoners can engage in prison conditions litigation, setting forth, *inter alia*, the definitions of such litigation, filing fees to be paid, and the ability of the trial court to dismiss such litigation for various reasons." *Lopez v. Haywood*, 41 A.3d 184, 186 (Pa. Cmwlth. 2012).

[2] During the relevant timeframe, and at the time of the September 6, 2018 filing of the underlying complaint, Rivera was incarcerated at SCI-Fayette.

(Silbaugh), notifying Rivera that the prison had confiscated "five duplicates of religious material" which Rivera had received in the mail from "Justice Divine Right." However, Rivera was permitted to receive the original document. (Complaint (Compl.), ¶14; Ex. A.)

On August 18, 2017, Rivera filed an inmate grievance, seeking delivery of the photocopies. *Id.* ¶17; Ex. C. On September 11, 2017, SCI-Fayette's business manager, defendant Michael Oppman (Oppman), denied Rivera's grievance, concluding that the denial was in accordance with administrative directive DC-ADM 803, which prohibits inmates from receiving duplicate copies of certain enumerated items, including publications, without prior approval from the Incoming Publication Review Committee (IPRC).[3] *Id.* ¶18; Ex. D. Thereafter, Rivera appealed to defendant Mark Capozza (Capozza), the Facility Manager, arguing that the five

_____

[3] Administrative Directive DC-ADM 803, titled "Inmate Mail and Incoming Publications Procedures Manual," was promulgated by the Department of Corrections (DOC) and governs inmate mail and incoming publications. It provides in pertinent part, as follows:

> a. . . . Inmates in general population may receive incoming publications subject to any applicable limit on the amount of property the inmate is permitted to store . . . . Incoming publications will be searched for contraband and reviewed for content. . . .
>
> * * *
>
> b. . . . Single copies of small letter-size pamphlets may be received in regular correspondence from family members, friends, or religious advisors.
>
> * * *
>
> i. An inmate may receive more than one copy of a publication only with special approval of the IPRC. Approval may be sought by submitting a DC-135A to the IPRC.

DC-ADM 803(E)(1)(a), (b), (i).

DC-ADM 803(E)(1)(i) is currently codified at 37 Pa. Code §93.2(g)(6) ("An inmate may receive only one copy of any publication unless granted permission by the publication review committee.").

2

documents at issue were photocopies of a four-page religious essay entitled *The Science of Prayer*, which Rivera wrote "for a publication conducive to Allah's 5% Nation of Gods and Earths."[4]  *Id.*, ¶20; Ex. F.  He alleged that he mailed the original essay to the editor of said publication, who later returned the original to Rivera, along with five photocopies for Rivera "to share with other Five Percenters."  *Id.*  Rivera maintained that receiving photocopies of the religious essay was not prohibited by any policy, and that the denial was not reasonably related to any penological justification.  *Id.*  He explained that on a prior occasion, in May of 2017, while incarcerated at SCI-Retreat, he was allowed to receive two photocopies of another essay he wrote.  *Id.*, ¶25.  Rivera argued that the denial of his photocopies on the instant occasion was arbitrary and capricious and infringed on his First Amendment rights to freedom of expression, religious freedom, and his right to associate with other Five Percenters.  *Id.*  On October 3, 2017, Capozza upheld the denial of Rivera's grievance.  *Id.*, ¶21; Ex. G.  Rivera appealed to defendant Dorina Varner (Varner), the Chief Grievance Officer, who determined that photocopies of the religious essay were appropriately denied under DC-ADM 803 because Rivera did not receive prior approval from the IPRC to receive multiple photocopies of a publication. *Id.*, ¶¶; Exs. H, I.

Dissatisfied that his grievance was denied, Rivera initiated this action, asserting claims for violations of 42 U.S.C. §1983 (Section 1983),[5] against four DOC

---

[4] Five Percenters believe in leading others to the path of righteousness through teachings that include the Bible, the Koran, "The 120 Degrees," "Supreme Mathematics," and the "Supreme Alphabet."  *See Saunders v. Lamas*, (E.D. Pa., No. CV 12-7131, filed Aug. 13, 2015), 2015 WL 9451022, at *3, report and recommendation adopted, (E.D. Pa., No. CV 12-7131, filed Dec. 23, 2015), 2015 WL 9450811.

[5] Section 1983 states in relevant part:

**(Footnote continued on next page…)**

employees: Silbaugh, Oppman, Capozza, and Varner (collectively "DOC Defendants"), in their individual and official capacities.

Rivera asserted claims under Section 1983 for alleged violation of his rights under the First and Fourteenth Amendments[6] to the United States Constitution based on his allegation that the DOC Defendants, acting under the color of state law, intentionally and maliciously misapplied the directives for incoming prisoner mail set forth in administrative directive DC-ADM 803. Specifically, he averred that the DOC Defendants erroneously and arbitrarily classified his "religious literature" as a "publication" under DC-ADM 803, in order to render the receipt of multiple photocopies thereof impermissible.[7] (Compl., ¶¶15, 18.) He asserted that the religious essay at issue is not a "publication" by any definition and, therefore, no prison policy precluded his receipt of multiple photocopies of it in the mail. *Id.* He further alleged that the DOC Defendants "purposefully ignored the procedural

---

**(continued…)**

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. §1983.

[6] The Equal Protection Clause of the Fourteenth Amendment provides: "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

[7] "Publication" is defined in DC-ADM 803 as: "(1) a photograph; and/or (2) printed material that is circulated among the public for conveying information, including, but not limited to, newspapers, magazines, hardcover or paperback books, catalogues, pamphlets, and newsletters regardless of Postal Rates." DC-ADM 803.

4

protections provided by [the DOC] policy" by denying him photocopies that are permissible under DC-ADM 802. *Id.*, ¶38.

Rivera alleged that the denial of his photocopies resulted in a violation of his First Amendment[8] right to religious freedom, particularly, "his right to freedom of expression as a Five Percenter in Allah's 5% Nation of Gods and Earths, and the right to freely associate with other Five Percenters without any penological justification or rational relationship to any [DOC] policy or law." *Id.*, ¶36. He also alleged that the DOC Defendants violated his right to equal protection in violation of the Fourteenth Amendment, and article I, section 1 of the Pennsylvania Constitution,[9] by singling him out as a "class of one," and denying him possession of his religious photocopies, while "all other [DOC] prisoners of [Rivera's] same status and condition regularly receive [religious photocopies] as a matter of [DOC] policy." *Id.*, ¶37. Based on these allegations, Rivera sought a declaratory judgment that his constitutional rights were violated, compensatory and punitive damages from each DOC Defendant, and an injunction directing the DOC Defendants to cease denying him photocopies of any documents that are permissible under DOC policy.

On November 29, 2018, the trial court *sua sponte* denied Rivera's application to proceed *in forma pauperis* and dismissed the matter as frivolous

---

[8] The First Amendment to the United States Constitution states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.

[9] Article I, section 1 of the Pennsylvania Constitution provides: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." Pa. Const. art. 1, §1.

pursuant to section 6602(e) of the PLRA, 42 Pa.C.S. §6602(e),[10] and Pa. R.C.P. No. 240(j).[11] The trial court reasoned that Rivera's complaint was a "prison conditions" litigation matter because it involved the effect of actions by a government party on the life of an individual confined in prison. (Trial ct. op. at 2.) The trial court explained that Rivera was challenging the actions of prison employees, specifically their confiscation of duplicative materials addressed to Rivera. *Id.* Taking the allegations as true, the trial court concluded that the complaint there "lack[ed] any cognizable basis for recovery." *Id.* The trial court further found that the confiscation of the material was not a "content-based" determination, and that Rivera was not denied access to his "religious materials" (as Rivera described the document) since he did receive the original document, but not the multiple photocopies of the same

---

[10] Section 6601 of the PLRA defines prison conditions litigation as "civil proceedings arising in whole or in part under Federal or State law with respect to the conditions of confinement or the effects of actions by a government party on the life of an individual confined in prison." 42 Pa.C.S. §6601. Pursuant to section 6602(e) of the PLRA, 42 Pa.C.S. §6602(e), a court is *required* to dismiss prison conditions litigation that it deems frivolous or that fails to state a cause of action in a situation where, as here, *in forma pauperis* status is sought. That provision states that a trial court "*shall* dismiss prison conditions litigation at any time" if it determines, *inter alia*, the litigation is "frivolous or malicious or fails to state a claim upon which relief may be granted. . . ." 42 Pa. C.S. §6602(e)(2) (emphasis added). The PLRA defines frivolous as "[l]acking an arguable basis in either law or in fact." 42 Pa.C.S. §6601. *See also McGriff v. Vidovich*, 699 A.2d 797, 799 (Pa. Cmwlth. 1997), *appeal denied*, 717 A.2d 1030 (Pa. 1998) (holding that a frivolous action, is one that "on its face does not set forth a valid cause of action").

[11] When a litigant in a civil action seeks to proceed *in forma pauperis*, Pa. R.C.P. No. 240(j)(1) permits a trial court to review the complaint before allowing the action to proceed. Pa. R.C.P. No. 240(j)(1) provides, in pertinent part:

> If, simultaneous with the commencement of an action or proceeding or the taking of an appeal, a party has filed a petition for leave to proceed in forma pauperis, the court prior to acting upon the petition may dismiss the action, proceeding or appeal if the allegation of poverty is untrue or if it is satisfied that the action, proceeding or appeal is frivolous.

document. *Id.* The trial court also determined the multiple photocopies were denied to Rivera, consistent with DC-ADM 803, which provides that an inmate may receive more than one copy of a publication only if the inmate has received prior approval from IPRC, which prior approval Rivera did not seek or receive. *Id.* Rivera timely filed the instant appeal.[12]

Before this Court, Rivera argues that his complaint stated a valid Section 1983 claim against the DOC Defendants for violation of his federal constitutional rights. He argues that paragraph 36 of the complaint alleges a First Amendment claim for the infringement on his right to communicate by mail, and freedom of expression of religion after his mail was "arbitrarily curtailed by the [DOC Defendants'] erroneous interpretation of policy and law." (Rivera's Br. at 7.) He alleges that paragraph 37 of the complaint states a claim for violation of his right to equal protection under the Fourteenth Amendment because he alleged that, on a prior occasion, he was permitted to receive multiple photocopies in the mail, and this "blatant[] contradiction" states a plausible claim for discrimination as a "class of one." *Id.* at 7, 9.

## Discussion

Central to Rivera's complaint is his contention that the DOC Defendants erroneously classified his religious essay as a "publication" under DC-ADM 803. At the outset, we must make clear that we lack jurisdiction to review the factual findings

---

[12] Our scope of review of the trial court's order is plenary where the trial court dismisses a complaint *sua sponte* for failure to state a cause of action upon which relief may be granted. *Owens v. Shannon*, 808 A.2d 607, 609 n.5 (Pa. Cmwlth. 2002). Further, our scope of review is plenary when considering questions of law. *Phillips v. A-Best Products Co.*, 665 A.2d 1167, 1170 (Pa. 1995).

and/or legal conclusions of Varner, the Chief Grievance Officer, with respect to her denial of Rivera's grievance.

DC-ADM 803 states that "[a]n inmate may receive more than one copy of a publication only with special approval of the IPRC." DC-ADM 803. Again, the definition of "publication" includes: "[p]rinted material that is circulated among the public for conveying information, including, but not limited to, newspapers, magazines, hardcover or paperback books, catalogues, pamphlets, and newsletters regardless of Postal Rates." DC-ADM 803.

Rivera argues that his mail was arbitrarily intercepted by the DOC Defendants' "erroneous interpretation of" DC-ADM 803. (Rivera's Br. at 7.) He maintains that the religious essay at issue is not a "publication" under DC-ADM 803, therefore, DC-ADM 803 does not apply. He argues that it is merely correspondence, and there is no DOC policy which restricts how many religious photocopies he may receive in the mail. *Id.*

### The DOC Defendants' Classification of the Religious Essay as a "Publication" under DC-ADM 803 is not Reviewable

As an initial matter, the Court notes that the question of whether the DOC Defendants erroneously denied Rivera five photocopies of the religious essay by classifying them as a "publication" under DC-ADM 803 does not fall within this Court's appellate jurisdiction. Resolving grievances is a purely internal function of DOC, not subject to review by a court. *Bronson v. Central Office Review Committee*, 721 A.2d 357 (Pa. 1998). *See also Xavier v. Pennsylvania Department of Corrections*, (Pa. Cmwlth., No. 331 M.D. 2016, filed February 8, 2017), 2017 WL 526304 (unreported), *aff'd per curiam* (Pa., No. 14 MAP 2017, filed October 18, 2017), 2017 WL 4679681 (holding that this Court lacked jurisdiction to review the

decision of the prison's chief grievance officer as to whether a photograph depicts nudity);[13] *Shore v. Pennsylvania Department of Corrections*, 168 A.3d 374, 382 (Pa. Cmwlth. 2017) (holding that because DC-ADM 803 curtails any property interest that inmate had in the photographs, and inmate's petition for review essentially disputed the applicability of the policy on a factual level, this Court lacked jurisdiction to entertain inmate's claim). This is true whether the review is sought in an appeal or in this Court's original jurisdiction.

Thus, to the extent Rivera disputes the applicability of the policy on a factual level, under *Bronson* and its progeny, we lack appellate jurisdiction to review either the factual findings or the legal conclusions of the Chief Grievance Officer. Consequently, for purposes of this appeal, we must assume that the religious essay at issue fell within the definition of "publication" under DC-ADM 803, and that five photocopies were denied pursuant to DOC policy, which prohibits receipt of multiple copies of publications without prior approval of the IPRC.

Nevertheless, this does not end the inquiry nor prevent our review of Rivera's civil rights claims. Rivera's complaint specifically cites Section 1983 as the basis of his claims. The substantive civil rights asserted by Rivera in his Section 1983 complaint are that DC-ADM 803 violated (1) his First Amendment right to communicate by mail and his right to freedom of religious expression, and (2) his right to equal protection of the laws, as established in the Fourteenth Amendment. (Compl., ¶¶36-37.)

---

[13] We may cite unpublished opinions as persuasive pursuant to this Court's Internal Operating Procedures. 210 Pa. Code §69.414(a).

## Civil Rights Claims under Section 1983

Section 1983 creates no substantive rights; it merely provides the vehicle for litigating deprivations of certain federal rights otherwise established. *Oklahoma City v. Tuttle*, 471 U.S. 808, 817 (1985). Thus, in determining whether an inmate's Section 1983 complaint states a constitutional claim, we look first to see whether the inmate has alleged an infringement of a federally protected right, *Brown v. Pennsylvania Department of Corrections*, 932 A.2d 316, 318 (Pa. Cmwlth. 2007), keeping in mind that not all deficiencies and inadequacies in prison conditions amount to a violation of an inmate's constitutional rights. *Booth v. King*, 228 F. App'x 167, 171 (3d Cir. 2007). Also, personal involvement of defendants in an alleged constitutional violation is a prerequisite under Section 1983. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). To maintain a Section 1983 claim, an inmate must allege that each defendant was directly and personally responsible for the purported conduct and establish fault and causation on the part of each defendant. *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883 (2d Cir. 1987).

## Lack of Personal Involvement in the Deprivation of Rivera's Rights

At the outset, we note that Rivera has failed to meet the threshold criteria for stating a Section 1983 claim against three of the four DOC Defendants because he has failed to allege that they were personally involved in the denial of his religious photocopies. Apart from Defendant Silbaugh,[14] Rivera does not allege that any other DOC Defendant had personal involvement with the actual decision to remove the photocopies from his mail. Rather, Rivera's sole claim against Defendants Oppman,

---

[14] *See* Compl., ¶14 (alleging that T. Silbaugh issued the Unacceptable Correspondence Form); ¶15 (alleging that T. Silbaugh denied the photocopies).

10

Capozza and Varner is that they "wrongfully denied" his administrative grievance at various stages of the grievance procedure. *See* Compl., ¶¶18, 21, 23. Prison officials whose only roles involved the denial of the prisoner's administrative grievances cannot be held liable under Section 1983. *Shick v. Wetzel* (Pa. Cmwlth., No. 583 M.D. 2016, filed Sept. 10, 2018), slip op. at 5, 2018 WL 4288663, at *3 (unreported) ("[P]risoners have no constitutionally-protected right to a grievance procedure and participation in after-the-fact review of a grievance or appeal is not enough to establish personal involvement for purposes of [Section] 1983."); *Martin v. Giroux* (Pa. Cmwlth., No. 1934 C.D. 2016, filed May 26, 2017), slip op. at 8, 2017 WL 2303362, at *4 (unreported). *See also Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation"); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (prison officials whose only roles involved the denial of the prisoner's administrative grievances cannot be held liable under Section 1983).

Because Rivera's sole allegations against Defendants Oppman, Capozza and Varner are based wholly on their participation in the grievance process, we conclude that dismissal of the complaint as against them was warranted on this ground alone.[15]

Turning next to Rivera's First Amendment claims, we find that they fall short of the constitutional mark.

---

[15] This Court may affirm on other grounds where grounds for affirmance exist. *Belitskus v. Hamlin Township*, 764 A.2d 669 (Pa. Cmwlth. 2000), *petition for allowance of appeal denied*, 775 A.2d 809 (Pa. 2001).

## Rivera's First Amendment Claims

Rivera alleges that the confiscation of the photocopies of his religious essay deprived him of his First Amendment right to communicate by mail, and his right to the free exercise of his religion. We find that Rivera has failed to allege a plausible violation of both constitutional provisions.

### *Right to Communicate by Mail*

To the extent that Rivera claims a First Amendment right to communicate by mail, based on the distribution of the original, but denial of five photocopies – there is no authority that confers such a right upon inmates. To be sure, the First Amendment to the United States Constitution protects an inmate's general right to communicate by mail. *See, e.g.*, *Thornburgh v. Abbott*, 490 U.S. 401 (1989) (analyzing constitutionality of regulation restricting prisoner receipt of outside publications by mail); *Turner v. Safley*, 482 U.S. 78, 89 (1987) (analyzing constitutionality of regulation restricting inmate-to-inmate mail); *Bussinger v. Department of Corrections*, 29 A.3d 79, 84 (Pa. Cmwlth. 2011) ("[T]he First Amendment to the United States Constitution has long been interpreted by the courts as including a general right to communicate by mail."). Indeed, interference with an inmate's mail can rise to the level of a constitutional violation. *See Bieregu v. Reno*, 59 F.3d 1445, 1451-52 (3d Cir. 1995) (involving a pattern and practice of tampering with legal mail), *overruled on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996). However, the First Amendment does not guarantee prisoners an unlimited right to unrestricted communication by mail, and it does not mean that an inmate is entitled to receive whatever he wants through the mail. *See, e.g., Sallier v. Brooks*, 343 F.3d 868, 874 (6th Cir. 2003) ("Not all mail that a prisoner receives from a legal source will implicate constitutionally protected legal mail rights.").

While correspondence by mail can be a sufficiently protected right, we conclude that Rivera has failed to raise an issue of constitutional magnitude. Essentially, Rivera mailed out an original document and received the original plus five copies back and he is complaining that he is not permitted to keep the photocopies. He was not prohibited from communicating with Justice Divine Right. The removal of the religious photocopies from his mail in no way deprived him of any opportunity to express himself or communicate with the outside world. As such, we conclude that the denial of the five photocopies included in the correspondence from Justice Divine Right was inconsequential and does not state a cognizable claim under the First Amendment. *See Harr v. Litscher* (W.D. Wis., No. 01-C-0159-C, filed Oct. 19, 2001), 2001 WL 34377573, at *11 (unreported) (holding that inmate's claims that he was denied multiple copies of incoming documents did not deprive him of any opportunity to express himself or communicate with the outside world and, therefore, such denial did not constitute a violation of his First Amendment rights); *Musquez v. Sepulveda* (N.D. Cal., No. C 07-5966 VRW, filed July 17, 2008), 2008 WL 2811503, at *1 (unreported) ("[A] few instances of lost mail do not amount to more than isolated incidents insufficient to state a First Amendment claim of mail interference."); *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990) (holding that complaint about undelivered catalogues fails to raise an issue of constitutional magnitude).

Moreover, a "single, isolated interference with [an inmate's] personal mail [is] insufficient to constitute a First Amendment violation." *Nixon v. Secretary of Pennsylvania Department of Corrections*, 501 F. App'x 176, 178 (3d Cir. 2012). *See also Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (isolated occurrence of opening one piece of legal mail by prison officials does not rise to a constitutional

13

claim); *Lingo v. Boone*, 402 F. Supp. 768, 773 (C.D. Cal. 1975) (prisoner not entitled to monetary relief under Section 1983 where prison officials erroneously withheld a single piece of mail on the grounds that it was inflammatory).

In this case, Rivera's complaint only describes a single incident.[16] Although Rivera alleged that there was a deliberate mishandling of his incoming mail, his allegation that the denial of the photocopies was based on the content of the essay is conclusory and speculative, ***especially because he was not denied the original***. Such an isolated incident does not give rise to a constitutional violation. Accordingly, we conclude that this claim does not identify the deprivation of a federally protected interest, and without such a deprivation a viable claim under Section 1983 has not been asserted.

### *Free Exercise of Religion*

Next, Rivera claims that the denial of the five photocopies has interfered with his right to religious freedom.

"Inmates clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). The Free Exercise Clause of the First Amendment prohibits prison officials from denying an inmate "a reasonable opportunity of pursuing his faith." *Cruz v. Beto*, 405 U.S. 319, 322 & n.2 (1972). However, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, ... aris[ing] both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone*, 482 U.S. at

---

[16] As noted, the other incident described in Rivera's complaint resulted in his receipt of the photocopies.

14

348 (citation omitted). In order to reconcile institutional interests and the inmate's interest in exercising his constitutional rights, the Supreme Court in *Turner* held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89.[17]

Here, Rivera has failed to demonstrate that a constitutionally protected interest is at stake because he fails to establish that the denial of the five photocopies impinged on his First Amendment right to the free exercise of his religion.

In *Mallory v. Stanitis* (Pa. Cmwlth., No. 365 C.D. 2014, filed May 5, 2015), 2015 WL 5437123 (unreported), we concluded that the facts alleged in the inmate's complaint did not set forth a claim of a denial of his right to the free exercise of his religion under the First Amendment. There, an inmate was dismissed from his job in the prison food line because his pants were rolled up above his state-issued boots. The inmate believed he should not wear garments lower than the middle of his shins based on his faith in Islam. The inmate brought a civil rights action claiming the denial of his ability to engage in the religious practice of rolling up his pant leg

---

[17] In *Turner*, the U.S. Supreme Court identified several factors for determining whether there is a reasonable relation between the prison regulation and the governmental interests. First, the regulation should operate in a neutral fashion, without regard to the content of the expression. Second, the court should consider whether there are other avenues of expression, at *de minimis* cost to the prison officials, that might be provided inmates. A third factor to consider is the impact of an accommodation to the asserted constitutional right. Finally, the courts should consider any evidence offered by the inmate that the regulation is an "exaggerated response" to prison concerns. *Turner*, 482 U.S. at 89.

Of course, the *Turner* analysis is appropriate only in cases where a prison policy is impinging on an inmate's constitutional rights. *Turner*, thus, assumes as a predicate that the plaintiff inmate has demonstrated that a constitutionally protected interest is at stake. *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000). We need not address these factors because Rivera has not demonstrated a constitutionally protected interest is at stake.

violated his rights under the Free Exercise Clause of the First Amendment. *Id.* at *2; slip op. at 3. This Court concluded that the facts alleged in the complaint did not set forth a claim of a denial of the inmate's right to the free exercise of his religion under the First Amendment because at most, the complaint established that on one occasion the inmate was dismissed from the job site for having his pants rolled up. We concluded that one isolated incident in which the inmate was informed that he needed to roll his pants down and dismissed from work for the day did not amount to a violation of the inmate's First Amendment rights, particularly in light of the fact that no inference can be raised that the inmate requested an accommodation for his religious practice. *Id.* at *6; slip op. at 11-12. *Cf. Johnson v. Varano* (Pa. Cmwlth., No. 714 C.D. 2010, filed Mar. 9, 2011), 2011 WL 10843816 (unreported) (holding that a single incident where a Muslim inmate was served pork did not constitute a violation of the inmate's First Amendment rights).

In *Brown v. Department of Corrections*, 265 F. App'x 107 (3d Cir. 2008), an inmate brought a civil rights complaint against prison officials, claiming, *inter alia*, that his religious mail was taken in violation of the First Amendment and his right to equal protection. The inmate's complaint was based on an incident where a prison official confiscated some Five Percenter newspapers that were mailed to the inmate. In concluding that the inmate's First Amendment rights were not violated, the Third Circuit Court of Appeals observed that the inmate admitted he was already receiving the newspaper from the publisher, and he did not contend that the taking of the newspapers that were mailed to him affected his ability to study the Five Percenters' teachings. *Id.* at 110.

As in *Brown* and *Mallory*, we likewise conclude that the factual averments in Rivera's complaint do not give rise to a constitutional violation under

the First Amendment for interference on his right to free exercise of his religion. Rivera does not allege how the denial of the photocopies hindered his ability to undertake the free exercise of his religion. He fails to explain how the photocopies affected his ability to engage in his particular religious practice, that the photocopies were essential religious texts, or that he could not fulfill his duties and obligations as a Five Percenter without them. At most, he has alleged a deprivation of extra copies of his essay. We find that such a minimal intrusion fails to constitute a substantial burden on the exercise of his religious beliefs.

To the extent that Rivera is arguing that the denial of the photocopies deprived of him the right to "associate with" other Five Percenters, he does not allege that this activity is a central part of his religious faith, nor that he is unable to practice his religion notwithstanding his inability to directly distribute copies of his essay to other prisoners. *See Johnson v. Rees* (E.D. Ky., No. 06-100, filed July 20, 2006), 2006 WL 2051609 (unreported) (inmate failed to state violation of rights under the Free Exercise Clause of the First Amendment due to prison's refusal to allow him to distribute religious materials directly to other inmates). Because Rivera failed to state a violation of rights under the First Amendment, we need not address whether the denial of the photocopies was related to a "legitimate penological interest" under *Turner*.

In sum, since Rivera was not deprived of a right secured by the Constitution, the first requirement for a viable Section 1983 action was not met. Rivera's complaint, therefore, failed to state a cause of action upon which relief may be granted under Section 1983 for violation of his First Amendment rights.[18]

---

[18] Rivera has not asserted a claim under the Religious Land Use and Incarcerated Persons Act, 42 U.S.C. §§ 2000cc-2000cc-4 ("RLUIPA"). The RLUIPA forbids state and local **(Footnote continued on next page…)**

## Rivera's Fourteenth Amendment Claim

Next, Rivera alleges that the DOC Defendants deprived him of his equal protection rights under the Fourteenth Amendment to the United States Constitution.

Rivera argues that the DOC Defendants intentionally mischaracterized his religious essay as a publication in order to justify the arbitrary denial of photocopies from being delivered in the mail – which resulted in him being singled out "as a class of one" and denied the privilege of receiving his religious materials in the mail. He alleges in this regard, as follows:

> 37. Plaintiff avers that each Defendant intentionally and maliciously acted in concert to single Plaintiff out as a class of one, and deny him the privilege to receive the religious photocopies at issue in this matter through the mail*, which all other Pa. D.O.C. prisoners of Plaintiff's same status and condition regularly receive as a matter of [DOC] policy*, without any penological justification or rational relationship to [DOC]t policy or law. Plaintiff avers that

---

**(continued…)**

governments that receive federal funding from imposing a "substantial burden" on the exercise of religious beliefs unless the regulation is the least restrictive means to adequately protect a compelling government interest. 42 U.S.C. § 2000cc(a)(1). Even if Rivera brought a RLUIPA claim, we would find for these same reasons that he has failed to demonstrate under the RLUIPA that his right to freely exercise his religious beliefs has been "substantially burdened." *See Thomas v. Review Board of Indiana Employment Security Division*, 450 U.S. 707, 718 (1981) (defining "substantial burden" as "substantial pressure on an adherent to modify his behavior and to violate his beliefs"). *See also Smith v. Allen*, 502 F.3d 1255, 1278 (11th Cir. 2007) ("No substantial burden occurs if the government action merely makes the 'religious exercise more expensive or difficult' or inconvenient, but does not pressure the adherent to violate her religious beliefs or abandon one of the precepts of her religion."); *Sullivan v. Younce* (E.D. Va., No. 3:15CV10, filed February 16, 2017), 2017 WL 655175, (unreported) (holding that removal of purported religious materials from inmate's cell was an inconvenience, not a substantial burden on his exercise of religion).

18

> the denial of the photocopies at issue in this mater clearly show that Plaintiff was singled out for discrimination, in violation of equal protection and due process of law.

(Compl., ¶37) (emphasis added).[19]

The Equal Protection Clause provides: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, §1. The "class of one" theory of equal protection provides that a plaintiff states a claim for violation of the Equal Protection Clause when he "alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). A class of one claim alleges discrimination, not because of membership in a particular class (e.g., race or gender), but because of an official's "ill will" or "spiteful effort" to harm him, or some other irrational reason. *Esmail v. Macrane*, 53 F.3d 176 (7th Cir. 1995). To allege an equal protection claim under a class of one theory, a plaintiff must show that "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Phillips v. County of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008) (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006)).

Rivera's complaint alleges that he was treated differently than other prisoners of his same status and condition, but he does not allege facts from which

---

[19] Rivera contends that the trial court erred by failing to address his Fourteenth Amendment claim. (Rivera's Br. at 8.) Even assuming the trial court erred in failing to more explicitly identify or address Rivera's "class of one" Equal Protection claim, any such error was harmless because we find such a claim to be meritless and we may affirm on any grounds supported by the record. *See Belitskus*.

one can conclude that other members of the Five Percenters, or any other religion for that matter, were permitted to receive multiple photocopies of published religious materials sent to them through the mail. The complaint alleges simply that "all other [DOC] prisoners of [his] same status and condition regularly receive [religious photocopies] as a matter of DOC policy." (Compl., ¶37.) This bald accusation fails to state a claim that the DOC Defendants intentionally singled him out for discriminatory treatment due to spite or vindictiveness. His claim is not supported by any factual allegations. "Assertions of intentional disparate treatment must be supported by specific factual allegations." *Myers v. Ridge*, 712 A.2d 791 (Pa. Cmwlth. 1998) (sustaining objection to prisoner's equal protection claim); *Stockton v. Commonwealth Department of Corrections* (Pa. Cmwlth., No. 765 C.D. 2012, filed Nov. 16, 2012), slip op. at 10, 2012 WL 8679780, at *5 (unreported) (upholding dismissal of similar claim because the inmate "set forth conclusory allegations rather than the requisite factual predicate for an equal protection claim"). Consequently, Rivera's complaint fails to allege a plausible equal protection claim under the class of one theory.

## Conclusion

Because Rivera has failed to plead facts sufficient to state a claim for (1) violation of his First Amendment right to infringement on his right to communicate by mail or his freedom of expression of religion; or (2) violation of his Fourteenth Amendment rights to equal protection, we must agree with the trial court that Rivera's complaint against the DOC Defendants is frivolous.

The order of the trial court is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

20

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Rivera,  
           Appellant  
       v.  

T. Silbaugh, Michael Oppman, Mark Capozza, and Dorina Varner

:
:
:   No. 1708 C.D. 2018
:
:
:
:

## *<u>ORDER</u>*

AND NOW, this 21st day of September, 2020, the order of the Court of Common Pleas of Fayette County is hereby AFFIRMED.

_____  
PATRICIA A. McCULLOUGH, Judge